**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| Joshua Knight, Michael Campbell, and Ernest Fabrizio, on behalf of themselves and all others similarly situated, | CASE NO. 7:22-cv-04592 |
| Plaintiff, | **AMENDED CLASS ACTION COMPLAINT** |
| vs. | |
| International Business Machines Corporation, the Plan Administrator Committee, and the IBM Personal Pension Plan, | |
| Defendants. | |

Plaintiffs Joshua Knight, Michael Campbell, and Ernest Fabrizio by and through their attorneys, on behalf of themselves and all others similarly situated, allege the following:

**I.  NATURE OF THE ACTION**

1.     This is a civil enforcement action brought under sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and (a)(3), concerning Defendants' violations of ERISA's actuarial equivalence, anti-forfeiture, and joint and survivor annuity requirements with respect to the IBM Personal Pension Plan (the "IBM Plan" or "Plan").

2.     Plaintiffs and the Class (as defined below) are vested participants in the IBM Plan, which denies them their full ERISA-protected pension benefits. Specifically, Plaintiffs and Class members receive pension benefits in the form of a joint and survivor annuity—a benefit that pays an annuity both to the participant for his life and for the life of the participant's surviving spouse.

In determining the amount of Plaintiffs' and Class members' joint and survivor annuities, however, Defendants employed actuarial assumptions over *40 years* out of date. That means Plaintiffs and Class members receive less than the "actuarial equivalent" of their vested accrued benefit, contrary to ERISA.

3.    The IBM Plan was established on September 1, 1945. Prior to July 1, 1999, the Plan was known as the IBM Retirement Plan.

4.    Generally, a participant's pension benefit is expressed as a single life annuity, meaning it pays a monthly benefit to the participant for his entire life (i.e., from the time he retires until his death).

5.    For married participants, however, the default form of pension payment is a joint and survivor annuity or "JSA." A joint and survivor annuity provides the participant a payment stream for his own life, and then, if he has a surviving spouse when he dies, for the life of his spouse. ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d). The survivor annuity is expressed as a percentage of the benefit paid during the participant's life; typically, the surviving spouse will receive 50%, 75%, or 100% of the benefit the participant received.

6.    To calculate a married participant (and their spouse's) joint and survivor annuity, the Plan starts with the participant's single life annuity, then uses actuarial assumptions to convert it to a joint and survivor annuity. When the Plan makes that conversion, ERISA requires the joint and survivor annuity to be the "actuarial equivalent" of the single life annuity. 29 U.S.C. § 1055(d).

7.    Actuarial equivalence is a computation designed to ensure that, all else being equal, all forms of receiving a pension have the same economic value. Generally, an actuarial equivalence computation considers both an interest rate and the expected longevity of a participant and their spouse. The interest rate accounts for the value of future pension payments, reflecting the time

value of money, while the mortality table accounts for the expected likelihood of that future payment being paid to the participant or their survivor based on the statistical life expectancy of a person at a given age.

8. When plans make these actuarial conversions, several provisions of ERISA and the relevant regulations ensure that the employer in fact provide participants a joint and survivor annuity with the same economic value as the single life annuity.

9. First, ERISA requires that joint and survivor annuities be "the actuarial equivalent of a single annuity for the life of the participant." ERISA §§ 205(d)(1)(B), (d)(2)(A)(ii), 29 U.S.C. §§ 1055(d)(1)(B), (d)(2)(A)(ii).

10. Second, ERISA requires that, if an employee's accrued benefit "is to be determined as an amount other than an annual benefit commencing at normal retirement age [of 65] . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit[.]" ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3).

11. Third, ERISA § 203(a), 29 U.S.C. § 1053(a), provides that an employee's right to their vested retirement benefits is non-forfeitable and states that paying a participant less than the actuarial equivalent value of their accrued benefit results in an illegal forfeiture of vested benefits.

12. Echoing the statute's actuarial equivalence requirements, applicable Treasury regulations make clear that actuarial "[e]quivalence may be determined[] on the basis of consistently applied reasonable actuarial factors[.]" 26 CFR § 1.401(a)-11(b)(2).[1]

13. The IBM Plan violates each of these rules for individuals who began participating in the Plan before it was amended effective July 1, 1999. For these individuals, when the Plan

---

[1] The Tax Code contains numerous provisions which correspond to ERISA; here the provision which corresponds to ERISA § 205 (29 U.S.C. § 1055) is 26 U.S.C. § 401(a)(11).

converts a single life annuity to a joint and survivor annuity, it uses a mortality table that is more than 40 years out of date, despite massive increases in life expectancy in the intervening decades. Participants in the Plan before July 1, 1999 and subject to the Plan terms at issue in this case are referred to as "Participants" herein.

14.    As a result, these Participants and their beneficiaries receive significantly less than the actuarial equivalent of their single life annuity, directly contrary to ERISA's requirements.

15.    Defendants appear to have recognized that these actuarial assumptions did not pass muster. In 1999, IBM restructured the Plan into a cash balance plan for newer employees to reduce its retirement obligations. When IBM amended the Plan effectuate this new structure, it amended the Plan's definition of actuarial equivalence to employ updated actuarial assumptions. But for people who had been employed by IBM before this amendment, Defendants continue to employ punitive, unreasonable, and severely outdated assumptions, which result in the Class receiving less than their full pensions.

16.    The members of the Class are Participants of the IBM Plan receiving a joint and survivor annuity (or an annuity calculated with reference to a joint and survivor annuity) and the beneficiaries of those Participants. Class members are harmed by Defendants' calculation and payment of benefits that are less than the actuarial equivalent of their protected retirement benefits, in violation of ERISA.

17.    The Class members are additionally harmed by Defendants' disclosures because Class members did not receive accurate information that is mandated by law and thus made retirement decisions based on misimpressions about the value of benefits available to them and the reasonableness of the Plan's actuarial assumptions.

4

18.     Plaintiffs bring this action on behalf of the Class pursuant to ERISA § 502(a)(2) and (a)(3), 29 U.S.C. 1132(a)(2) and (a)(3) for all appropriate equitable relief, including but not limited to: a declaration that the Plan's actuarial assumptions violate ERISA's actuarial equivalence and non-forfeitability requirements as to the Class; an injunction requiring Plan fiduciaries to ensure that the Plan pays actuarially equivalent benefits to all Class members; reformation of the Plan to provide for proper actuarial assumptions as to Class members; and recalculation of benefits for all Class members and payment to them of the amounts owed under an ERISA-compliant plan.

## II.  JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

20.     This Court has personal jurisdiction over International Business Machines Corporation because it transacts business in, employs people, and has significant contacts with this District, and because ERISA provides for nationwide service of process.

21.     This Court has personal jurisdiction over the Plan because it offers and pays pension benefits to Participants and beneficiaries in this District, and because ERISA provides for nationwide service of process.

22.     This Court has personal jurisdiction over the Plan Administrator Committee because it transacts business in and has significant contacts with this District, and because ERISA provides for nationwide service of process.

23.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant International Business Machines Corporation may be found in,

employed Plaintiffs Knight, Campbell, and Fabrizio and other Class members in, and otherwise does business in this District.

24.   Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Plaintiff Knight and, on information and belief many other Plan Participants and Class members, reside in this District.

### III.  PARTIES

**Plaintiffs**

25.   **Plaintiff Joshua Knight** resides in this District and is a participant in the IBM Personal Pension Plan. He worked for IBM for 34 years, where he served as a research staff member. When Plaintiff Knight retired from IBM, he elected the 100% joint and survivor annuity offered by the Plan as a "Qualified" joint and survivor annuity. His benefits were calculated based on the assumptions that applied to individuals that participated in the Plan prior to July 1, 1999. Had Plaintiff Knight's benefits been determined using reasonable actuarial assumptions (such as those set forth in 26 U.S.C. § 417(e), discussed below), his joint and survivor annuity would be larger. As a result, he suffered harm from Defendants' application of the Plan's outdated and unreasonable actuarial assumptions to his pension.

26.   **Plaintiff Michael Campbell** is a participant in the IBM Personal Pension Plan. He worked for IBM for 45 years, where his position upon retirement was serving as a senior security sales enablement specialist. When Plaintiff Campbell retired from IBM, he elected the 80% joint and survivor annuity offered by the Plan as a "Qualified" joint and survivor annuity. His benefits were calculated based on the assumptions that applied to individuals that participated in the Plan prior to July 1, 1999. Had Plaintiff Campbell's benefits been determined using reasonable actuarial assumptions (such as those set forth in 26 U.S.C. § 417(e), discussed below), his joint and survivor

annuity would be larger. As a result, he suffered harm from Defendants' application of the Plan's outdated and unreasonable actuarial assumptions to his pension.

27. **Plaintiff Ernest Fabrizio** is a participant in the IBM Personal Pension Plan. He worked for IBM for 38 years, where his position upon retirement was a senior program manager. When Plaintiff Fabrizio retired from IBM, he elected the 50% joint and survivor annuity offered by the Plan as a "Qualified" joint and survivor annuity. His benefits were calculated based on the assumptions that applied to individuals that participated in the Plan prior to July 1, 1999. Had Plaintiff Fabrizio's benefits been determined using reasonable actuarial assumptions (such as those set forth in 26 U.S.C. § 417(e), discussed below), his joint and survivor annuity would be larger. As a result, he suffered harm from Defendants' application of the Plan's outdated and unreasonable actuarial assumptions to his pension.

**Defendants**

28. **International Business Machines Corporation** ("IBM") is world-wide technology company that specializes in software, technological infrastructure, and consulting. It is headquartered in Armonk, New York and operates throughout the country.

29. IBM is the "plan sponsor" for the Plan within the meaning of § 3(16)(B), 29 U.S.C. § 1002(16)(B).

30. IBM makes contributions to the Plan to fund retirement benefits promised under the Plan.

31. **The IBM Personal Pension Plan** (the "IBM Plan" or "Plan") is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35). The Plan is joined as a nominal defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

7

32.     Pursuant to 29 U.S.C. § 1102, the Plan was established and maintained pursuant to a written instrument known as a "Plan Document."

33.     IBM established the Plan on September 1, 1945 and amends it from time to time. IBM last amended the Plan effective January 1, 2016.

34.     Prior to July 1, 1999, the Plan was named the IBM Retirement Plan.

35.     **The Plan Administrator Committee** is the Plan's "administrator" within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). It is responsible for the general administration of the Plan. The Committee consists of individuals appointed by IBM Vice President responsible for Finance and the IBM Vice President responsible for Human Resources.

36.     The Plan Document provides that the IBM Vice President responsible for Finance and the IBM Vice President responsible for Human Resources shall appoint one or more persons employed by IBM as an Assistant Controller, the Director of Employee Benefits, or the Director (or Manager) of U.S. Retirement Funds or such other person or persons holding comparable positions as they deem appropriate, to serve as Plan Administrator or as a committee to fulfill the function of Plan Administrator.

37.     Under the Plan Document, the Plan Administrator Committee is and was a "named fiduciary" of the Plan at all relevant times within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a). As such, the Plan Administrator Committee had and has the authority to control and manage the operation and administration of the Plan.

38.     The Plan Document further provides that the Plan Administrator Committee's powers "shall include, without limitation, the full authority and discretion" "to incorporate changes required by law" and "determine whether one form of income under the Plan is the Actuarial Equivalent of another form of income under the Plan."

39.    Based on the Plan Administrator Committee's discretionary authority and/or discretionary responsibility for Plan administration set forth in the Plan Document, the Plan Administrator Committee is also a Plan fiduciary within the meaning of § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii).

## IV.  LEGAL BACKGROUND

### A.    Actuarial Equivalence

40.    Actuarial equivalence is a computation that is designed to ensure that, all else being equal, two (or more) forms of benefit payments have the same economic value as each other.

41.    Generally, an actuarial equivalence computation considers the expected longevity of a participant and his spouse, and an interest rate which reflects the time value of money through a reasonable rate of return based on current market conditions.

42.    To comply with ERISA, as well as to be considered a qualified plan under the Tax Code, a plan must comply with specified valuation rules. See Treas. Reg. § 1.411(a)–11(a)(1).

43.    ERISA provides that "in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit[.]" § 204(c)(3), 29 U.S.C. § 1054(c)(3).

44.    ERISA defines "normal retirement age" as age 65, or younger if provided by the pension plan. ERISA § 3(24), 29 U.S.C. § 1002(24); see also 26 U.S.C. § 411(a)(8); Treas. Reg. § 1.411(a)–7(b).

45.    This actuarial equivalence requirement set forth in ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3), is repeated in the parallel Tax Code provision. 26 U.S.C. § 411(c)(3). The Treasury regulations that construe 26 U.S.C. § 411(c)(3) likewise confirm the actuarial equivalence rule.  26

C.F.R. § 1.411(c)-1(e) (referring to the "actuarial equivalence" of the participant's accrued benefit in conformance with Treasury regulations).

46.    In addition to the valuation rules referenced above, to comply with ERISA and to be considered a qualified trust under the Tax Code, a plan also must comply with certain actuarial equivalence rules. 26 CFR § 1.401(a)-11(a)(1).

47.    The Treasury provides reasonable interest rates and mortality tables that are regularly updated. *See* 26 U.S.C. § 417(e)(3). These interest rates and mortality tables provide a reference point that ensures actuarial equivalence for the conversion of benefits among different forms.

48.    For a "qualified joint and survivor annuity," ERISA § 205(a), 29 U.S.C. § 1055(a) requires that pension plans offer married participants the option of receiving a payment stream for their life and their spouse's life after the retiree dies; this is a "joint and survivor annuity." ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d).

49.    ERISA also provides that the joint and survivor annuity shall be "the actuarial equivalent of a single annuity for the life of the participant." ERISA §§ 205(d)(1)(B), (d)(2)(A)(ii), 29 U.S.C. §§ 1055(d)(1)(B), 1055(d)(2)(A)(ii). This definition is repeated in the Tax Code provision of ERISA at 26 U.S.C. § 417(b)(2) (defining "Qualified Joint and Survivor Annuity" as "the actuarial equivalent of a single life annuity for the life of the participant") and § 417(g)(2) (defining "Qualified Optional Survivor Annuity" as "the actuarial equivalent of a single life annuity for the life of the participant").

50.    Similarly, the Treasury regulations concerning joint and survivor annuities require that a "qualified joint and survivor annuity must be at least the actuarial equivalent of the normal form of life annuity or, if greater, of any optional form of life annuity offered under the plan.

Equivalence may be determined, on the basis of consistently applied reasonable actuarial factors[.]" 26 C.F.R. § 1.401(a)-11(b)(2).

51. Treasury regulations explain this means "in the case of a married participant, the QJSA [Qualified Joint and Survivor Annuity] must be *at least as valuable as any other optional form of benefit payable under the plan at the same time.*" 26 C.F.R. § 1.401(a)-20 Q&A-16 (emphasis added).

52. In effect, the default form of pension annuity paid to a married retiree should have the same value as the single life annuity that the retiree could have elected and would be paid to that retiree's analogous unmarried co-worker of the same age.

**B.     Non-Forfeitability**

53. ERISA § 203(a), 29 U.S.C. § 1053(a), sets forth "Nonforfeitability requirements," which provide that "an employee's right to his normal retirement benefit is non-forfeitable upon the attainment of normal retirement age[.]"

54. The Treasury regulation which "defines the term 'nonforfeitable' for purposes of these [non-forfeitability] requirements," 26 C.F.R. § 1.411(a)-4(a), states that "*adjustments in excess of reasonable actuarial reductions, can result in rights being forfeitable.*" (emphasis added).

55. Thus, distribution of retirement benefits that are less than their actuarial equivalent value constitutes an impermissible forfeiture under ERISA § 203(a), 29 U.S.C. § 1053(a).

<h3 style="text-align:center"><u>V.  FACTUAL ALLEGATIONS</u></h3>

**A.     The Plan Employed Highly Outdated and Unreasonable Actuarial Assumptions in Determining Class Members' Benefits, Resulting in Significant Harm**

11

56.     The Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

57.     Pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), the Plan is established and maintained according to a written instrument (the "Plan Document").

58.     The Plan provides retirement benefits to substantially all U.S. employees of IBM. As of 2020, the Plan collectively had more than 227,460 participants and assets valued at approximately $56 billion.

59.     Under the Plan, a Participants' normal retirement benefit is expressed as a single life annuity, meaning a series of monthly benefit payments beginning at retirement and continuing until a participant's death. This is the default form of payment for unmarried participants.

60.     For married Participants, the default form of payment is a 50% joint and survivor annuity. That means the participant's surviving spouse receives 50% of whatever amount the participant received during his lifetime.

61.     ERISA plans are also required to provide Participants the option of selecting a "Qualified Optional Survivor Annuity," which is an actuarially equivalent joint and survivor annuity that has a different survivor annuity percentage than the Plan's default option for married participants. ERISA § 205(d)(2), 29 U.S.C. § 1055(d)(2).

62.     Accordingly, Participants may elect one of several optional forms of benefits, including a joint and survivor annuity that provides a survivor annuity ranging anywhere from 1% to 100% of the monthly benefit paid to the retiree.

63.     In certain circumstances, the spouse of a participant who dies before commencing retirement benefits is entitled to what is known as a "pre-retirement survivor annuity." As required by ERISA § 205(e), 29 U.S.C. § 1055(e), the pre-retirement survivor annuity provides the surviving spouse an annuity equal to the survivor annuity portion of the qualified joint and survivor annuity the participant would have been entitled to had he not died. Under the Plan, the qualified joint and survivor annuity is a 50% joint and survivor annuity, meaning that the surviving spouse receives 50% of the amount the participant would have received upon commencement of benefits.[2]

64.     To determine the amount of the joint and survivor annuities for Participants (as well as survivors of Participants who received a pre-retirement survivor annuity), the Plan converted the Participant's single life annuity using the following assumptions: "8% interest and the UP-1984 Mortality Table with a three-year setback for Participants and a six-year setback for Beneficiaries."

65.     Unisex Pension (UP) – 1984 ("UP-1984 Mortality Table") is a mortality table developed by the Committee on Self-Administered Retirement Plans from the Society of Actuaries in 1976. It was based on mortality experience data among non-insured private pensioners observed over the years 1965-1970. Because this data was compiled in an era when the American workforce was predominately male, only 20% of the mortality reflected in the UP-1984 Mortality Table is based on female employee experience.

66.     Relatedly, the UP-1984 Mortality Table was based on a cross-section of "blue-collar" workers, who generally have decreased longevity compared to "white-collar workers."

---

[2] Because the amount of the pre-retirement survivor annuity is simply a reflection of how the Plan calculates the joint and survivor annuity the participant would otherwise have received, references to the Plan's calculation of joint and survivor annuities also include the Plan's calculation of pre-retirement survivor annuities.

67.     The actuarial community, represented by the Society of Actuaries, regularly updates mortality tables as it gathers additional experience data demonstrating changes in longevity.

68.     In 1995, the Society of Actuaries released a replacement table for the UP-1984 Mortality Table, called the Unisex Pension (UP) – 1994 ("UP-1994 Mortality Table"). It was developed by the Society of Actuaries to replace the UP-1984 Mortality Table after a study of 1985 mortality experience found mortality rates were between 82 percent and 86 percent of those expected under the UP-1984 Mortality Table (meaning people were living longer than expected).

69.     The Society of Actuaries has continued to update its published mortality tables to reflect steady long-term improvements in American's longevity resulting from changes in life-style and medical technology.

70.     The Plan, however, continues to utilize outdated mortality assumptions when calculating joint and survivor benefits for Participants. It thus assumes Participants are likely to die sooner than recent actuarial experience data supports.

71.     Though the Plan Document purported to comply with ERISA and all other applicable laws, the Plan did not and does not in fact pay to Participants the "actuarial equivalent" for joint and survivor annuities.

72.     The mortality table employed by the Plan is more than 40 years out of date, despite dramatic increases in longevity of the American public. Those increases are reflected in the mortality tables provided for by 29 U.S.C. § 1055(g), which are updated routinely by the Treasury Department.

73.     Nonetheless, for Participants who received a joint and survivor annuity, the Plan's actuarial assumptions are outdated, unreasonable, and result in paying JSAs that are less than the actuarial equivalent value of the participant's single life annuity benefit.

14

74.    Indeed, the calculation of a joint and survivor annuity using reasonable mortality assumptions (for example, those prescribed by 26 U.S.C. § 417(e), which employ regularly updated assumptions published by the Treasury Department and reflecting the Society of Actuary's recent analyses), is substantially more favorable for Class members than the use of the Plan's outdated and unreasonable assumptions for Participants.

75.    Take for example a Participant like Plaintiff Knight, who retired at age 69 with a similarly aged spouse and who elected a 100% joint and survivor annuity. That Participant and their surviving spouse are receiving approximately 3% less than they would under § 417(e).

76.    A similar outcome is experienced by a Participant that retires at age 65 with a similarly aged spouse. An age 65 retiree and their surviving spouse are receiving approximately 2% less than they would under § 417(e).

77.    The underpayment suffered by Participants is even greater than what 417(e) assumptions reveal when considering the mortality experience pertinent to a white-collar annuitant population. Take for example a Participant like Plaintiff Knight, who retired at age 69 with a similarly aged spouse and who elected a 100% joint and survivor annuity. That Participant and their surviving spouse are receiving approximately 5% less than they would under current white-collar mortality assumptions.

78.    These underpayments will reoccur in the Participant's monthly pension payments.

79.    In aggregate, the Plan's failure to provide actuarially equivalent joint and survivor annuities has caused (and will cause) Class members to lose tens of millions of dollars in benefits.

80.    The Plan Administrator Committee, as the Plan's named fiduciary and plan administrator, was responsible for calculating and paying benefits in accordance with ERISA's

requirements and the Plan's terms, unless those Plan terms themselves violate ERISA, in which case ERISA's fiduciary duties required the Plan Administrator Committee to act in accordance with ERISA rather than the Plan. *See* 29 U.S.C. § 1104(a)(1)(D).

81.     Because ERISA requires that plan fiduciaries treat all plan Participants equally and equitably, the Plan Administrator Committee must act loyally and prudently to ensure that all Participants are receiving the actuarial equivalent of their single life annuity. But, despite having authority under the Plan to provide actuarially equivalent benefits, the Plan Administrator Committee breached its fiduciary duties and instead calculated retirement benefits using the Plan's outdated and unreasonable assumptions, which penalize Participants for being married, compared to those who are single at retirement and thus receive an (unreduced) single life annuity. That breach, in turn, allowed the entity that ultimately controls the Plan Administrator Committee, IBM, to save money by reducing the amount it had to contribute to the Plan to fund benefits.

82.     Moreover, Defendants failed to disclose to Participants that they would receive less than the actuarial equivalent value of their accrued, vested pension benefit if they selected a joint and survivor annuity.

**B.     The Plan Uses Updated Actuarial Assumptions for Other Purposes**

83.     For purposes of a plan sponsor's minimum funding of pension benefits, ERISA requires that "the determination of any present value or other computation under this section shall be made on the basis of actuarial assumptions and methods—(A) each of which is reasonable (taking into account the experience of the plan and reasonable expectations), and (B) which, in combination, offer the actuary's best estimate of anticipated experience under the plan." ERISA § 303(h), 29 U.S.C. § 1083(h).

84. Here, the Plan's minimum funding requirements were determined for 2020 using mortality assumptions from an updated 2014 white-collar mortality table that incorporates projected future mortality improvements based on assumptions current to 2020.

85. As a publicly traded Company, IBM must also disclose the present value of its pension benefit obligations ("PBO") to investors in SEC Filings.

86. The actuarial assumptions IBM uses to calculate these disclosures must be reasonable in order for IBM to accurately report the size of its PBO to the market.

87. Based on information and belief, IBM uses the same updated, white-collar mortality assumptions to calculate its PBO as it uses to calculate its ERISA § 303(h) minimum funding obligation.

88. The Plan also uses updated actuarial assumptions to calculate optional forms of benefits for other Plan participants.

89. The Plan uses updated assumptions from 26 U.S.C. § 417(e) to calculate joint and survivor annuities paid to participants in its post-June 30, 1999 cash balance program.

90. Moreover, for individuals who elect to receive a lump sum payment in lieu of an annuity, the Plan applies the reasonable and regularly updated actuarial assumptions established pursuant to 26 U.S.C. § 417(e).

91. In other words, the actuarial assumptions the Plan uses for ERISA's minimum funding requirements, SEC disclosures, cash balance joint and survivor annuity conversions, and lump sum payments assume significantly greater longevity than the Plan does when calculating Participants' joint and survivor annuities. The Plan therefore used different assumptions, regarding the same variables, to calculate ERISA funding requirements, SEC disclosures, cash balance joint and survivor annuity conversions, and lump sum payments (using updated assumptions), from

17

those it used to calculate benefit reductions for joint and survivor annuities (using outdated assumptions).

92.    For Plaintiffs and Class members—Participants receiving a joint and survivor annuity—the Plan continues to employ its blatantly outdated and unreasonable assumptions.

**C.    Defendants Misrepresented the Amount of Participants' ERISA-Protected Benefits, Reducing IBM's Funding Obligations and Expenses**

93.    ERISA requires that a fiduciary provide accurate information to participants so that they can make informed decisions about their retirement benefit choices. *Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 104 (2d Cir. 2020); *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 872 (7th Cir. 2013); *Washington v. Bert Bell/Pete Rozelle NFL Ret. Plan*, 504 F.3d 818, 823-24 (9th Cir. 2007).

94.    When participants are deciding when to retire and what form of benefit to elect, Treasury Regulations require plans to communicate the value of their pension options "in a manner that provides a meaningful comparison of the relative economic values of the two forms of benefit without the participant having to make calculations using interest or mortality assumptions." 26 C.F.R. § 1.417(a)(3)-1(c)(2)(i).

95.    Treasury Regulations further require that, when preparing these communications plans use "***a single set of interest and mortality assumptions that are reasonable and that are applied uniformly with respect to all such optional forms payable*** to the participant (regardless of whether those assumptions are actually used under the plan for purposes of determining benefit payments)." 26 C.F.R. § 1.417(a)(3)-1(c)(2)(iv)(B).

96.    When deciding if and when to retire, and what form of benefit to elect, Plaintiffs and the Class relied upon the accuracy and sufficiency of information provided to them by Defendants to plan for retirement.

18

97. Defendants provided information to Class members concerning the amount of retirement benefits they would receive under various forms of retirement benefit.

98. When communicating to Plaintiffs and the Class, Defendants failed to use "a single set of interest and mortality assumptions that are reasonable," and instead calculated the value of benefits using the Plan's outdated and unreasonable actuarial assumptions for calculating joint and survivor annuities.

99. Additionally, despite requirements that a plan communicate the value of benefits using a "single set" of actuarial assumptions that are "applied uniformly with respect to all such option form," Defendants utilize four different sets of actuarial assumptions to calculate the value of four different forms of benefit that are compared in such disclosures.

100. Defendants did not disclose to Class members the amount of pension benefit they would have been entitled to if Defendants had utilized reasonable actuarial equivalence assumptions.

101. Defendants also failed to disclose to Class members that the actuarial assumptions applied to determine their joint and survivor annuities resulted in pensions that were less than the actuarial equivalent value of the single life annuity available when they retired.

102. Thus, Class members were forced to choose between improperly reduced joint and survivor annuities and forms of benefit that did not necessarily meet their retirement needs, such as a single life annuity or single lump sum payment. Class members sacrificed economic value by selecting the joint and survivor annuities, the full actuarial value of which is protected by ERISA but not disclosed or provided to Class members.

103. These misrepresentations and failures to disclose material information prevented Class members from adequately assessing what form of benefit to elect and how best to plan for their retirements.

104. IBM financially benefitted by failing to disclose to Class members that they were receiving less than the actuarially equivalent value of their ERISA-protected pensions.

105. IBM in fact received and continues to receive direct financial benefits from paying participants joint and survivor annuities that are less than the law allows, which reduces IBM's funding obligations to the Plan.

106. This illegal arrangement continues to benefit IBM because, despite having updated its actuarial assumptions for more recent retirees, it still applies the outdated, unreasonable, and highly punitive actuarial assumptions to Class members.

## VI. CLASS ALLEGATIONS

107. Plaintiffs bring this action on behalf of himself and all Participants of the Plan (and their beneficiaries) who are receiving a joint and survivor annuity (or, for beneficiaries whose spouse died before commencing benefits, a pre-retirement survivor annuity) that was calculated pursuant to IBM Plan Provisions A-4.2(e) and which is less than the value of the single life annuity converted to a joint and survivor annuity using the interest rates and mortality tables set forth in 26 U.S.C. § 417(e).

**A.      Numerosity**

108. The members of the Class are so numerous that joinder of all members is impractical. To the best of Plaintiffs' knowledge based on the available information, the Class includes thousands of individuals. Based on available governmental filings, as of December 31, 2020 there were over 100,000 Participants and beneficiaries receiving benefits under the Plan.

**B.      Commonality**

20

109.    There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

A.    Whether the actuarial assumptions used to determine the value of the joint and survivor annuities paid to Class members violate the actuarial equivalence requirements of ERISA.

B.    Whether those assumptions illegally caused Class members to forfeit their vested benefits.

C.    Whether the Plan Administrator Committee violated its ERISA fiduciary duties of loyalty, prudence, and to follow the Plan Document only if its terms are consistent with ERISA.

D.    Whether the Plan Administrator Committee should be enjoined from applying the outdated actuarial assumptions to the Class and instead be required to calculate benefits for Class members based on actuarial equivalence calculations which are consistent with the Plan's other actuarial equivalence determinations.

E.    Whether the Plan should be reformed to eliminate any actuarial assumptions which reduce pension benefits paid or payable to Class members below the actuarial equivalent value of those benefits.

F.    Whether Class members should be paid additional benefits under the Plan as reformed to provide them the difference between the benefit the Plan previously determined to be their reduced benefit and the actuarially equivalent value of their benefit.

## C.    Typicality

110.    Plaintiffs' claims are typical of the claims of the members of the Class because they arise out of the same policies and practices as alleged herein, and all members of the Class are affected by Defendants' wrongful conduct.

## D.    Adequacy

111.    Plaintiffs will fairly and adequately represent the Class, and they have retained counsel experienced and competent in the prosecution of ERISA class actions. Plaintiffs have no interests antagonistic to those of other members of the Class. Plaintiffs are committed to the

21

vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

**E.      Rule 23(b)(1) Requirements**

112.   The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

113.   The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members non-parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

**F.      Rule 23(b)(2) Requirements**

114.   Class action status is also warranted under Rule 23(b)(2) because Defendants have acted vis-à-vis the Plan as a whole, which should result in appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

115.   Individual Class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plan or affect each Class member equally.

**G.      Rule 23(b)(3) Requirements**

116.   If the Class is not certified under Rule 23(b)(1) or (b)(2), then certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members. The common issues of law or fact that predominate over any questions affecting only individual members include: those listed above in Section VI.B.

117.   There are no difficulties in managing this case as a class action.

## VII.  CAUSES OF ACTION

### COUNT I: VIOLATION OF THE JOINT AND SURVIVOR ANNUITY REQUIREMENT OF ERISA § 205, 29 U.S.C. § 1055 (AGAINST ALL DEFENDANTS)

118.  Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

119.  ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d) requires that all plans shall provide benefits in the form of a "Qualified Joint and Survivor Annuity" and "Qualified Optional Survivor Annuity," and ERISA § 205(d), 29 U.S.C. § 1055(d) provides that they must be "the actuarial equivalent of a single annuity for the life of the participant."

120.  Treasury regulations setting forth plan requirements provide that a "qualified joint and survivor annuity must be at least the actuarial equivalent of the normal form of life annuity or, if greater, of any optional form of life annuity offered under the plan . . . determined, on the basis of consistently applied reasonable actuarial factors[.]" 26 C.F.R. § 1.401(a)-11(b)(2).

121.  In other words, ERISA § 205(a)-(d) requires that at the time a Participant retires, if he takes his benefit as a joint and survivor annuity, the value of the joint annuity must be no less the actuarial equivalent of his single life annuity.

122.  As explained above, the actuarial assumptions applicable to Class members' joint and survivor annuities reduced Class members' benefits to less than the actuarial equivalent value of their ERISA protected benefits expressed as the single life annuity at the same retirement date, and they are based on different actuarial assumptions than the Plan uses for determining its funded status and for calculating other forms of benefits.

123.  Thus, the Plan's actuarial assumptions for joint and survivor annuities applicable to Class members violate ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d).

124.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

125.    Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate equitable relief against Defendants to redress the violations of ERISA § 205, 29 U.S.C. § 1055 described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

126.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

127.    ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

128.    Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and §1109(a), Plaintiffs seek all available and appropriate remedies against the Plan Administrator Committee to redress violations of ERISA § § 205, 29 U.S.C. § 1055 described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

**COUNT II: VIOLATION OF THE ACTUARIAL EQUIVALENCE
REQUIREMENT OF ERISA § 204, 29 U.S.C § 1054
(AGAINST ALL DEFENDANTS)**

24

129.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

130.    ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) requires that "if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age [here 65] . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit[.]"[3]

131.    Relevant here, in determining the joint and survivor annuities for Class members, the Plan applied actuarial assumptions that were highly unreasonable and out of date, resulting in the payment of less than the actuarial equivalent of a Participant's single life annuity.

132.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

133.    Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate equitable relief against Defendants to redress the violations of ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

134.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

---

[3] Separately, ERISA § 205, 29 U.S.C. § 1055, requires that, at the time a participant retires, if she takes her benefit as a joint and survivor annuity, the value of the joint annuity must be no less the actuarial equivalent of the single life annuity payable at retirement, even if the participant retires early. *See* Count I, *supra*. Thus, Count I provides an independent claim from Count II, which is based on a comparison of the value of a participant's annuity on the date the participant retires to her annuity at normal retirement age, even if she retires early.

135.     ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

136.     Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and §1109(a), Plaintiffs seek all available and appropriate remedies against the Plan Administrator Committee to redress violations of ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

## COUNT III: VIOLATION OF THE ANTI-FORFEITURE RULES OF ERISA § 203, 29 U.S.C. § 1053 (AGAINST ALL DEFENDANTS)

137.     Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

138.     ERISA § 203(a) of ERISA, 29 U.S.C. § 1053(a), sets forth ERISA's "Nonforfeitability requirements," which provide that "an employee's right to his normal retirement benefit is non-forfeitable[.]" The Treasury regulation, 26 C.F.R. § 1.401(a)-14(c), that "defines the term 'nonforfeitable' for purposes of these [non-forfeitability] requirements" states that "adjustments in excess of reasonable actuarial reductions, can result in rights being forfeitable."

139.     Thus, paying a Participant less than the actuarial equivalent of his vested normal retirement benefit results in an illegal forfeiture of her vested benefits. ERISA § 203(a), 29 U.S.C. § 1053(a).

26

140. As explained above, Class members received less than the actuarial equivalent of their benefits (expressed as single life annuities) because the Plan's actuarial assumptions for calculating Class members' joint and survivor annuities provided them with less than the actuarial equivalent of their ERISA-protected benefits.

141. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

142. Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate equitable relief against Defendants to redress the violations of ERISA § 203(a), 29 U.S.C. § 1054(a) described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

143. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

144. ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

145. Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and § 1109(a), Plaintiffs seek all available and appropriate remedies against the Plan Administrator Committee to

redress violations of ERISA § 203(a), 29 U.S.C. § 1054(a) described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

## COUNT IV: BREACHES OF FIDUCIARY DUTY
## (AGAINST THE PLAN ADMINISTRATOR
## COMMITTEE)

146.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

147.    During all relevant times, the Plan Administrator Committee was a named fiduciary of the Plan and was responsible for paying benefits in accordance with ERISA's requirements and the Plan's terms, unless those Plan terms themselves violated ERISA.

148.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires the Plan Administrator Committee, as the Plan Administrator charged with paying benefits consistently with ERISA's requirements, to act loyally in the best interest of all Plan participants, including the Class members. This duty further requires the Plan Administrator Committee to communicate with Plaintiffs and other Plan participants honestly and accurately.

149.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires that the Plan Administrator Committee, as the Plan Administrator charged with paying benefits consistently with ERISA's requirements, act prudently when determining benefits owed to Plan participants, which includes ensuring that all benefits paid pursuant to the Plan conformed with ERISA's statutory requirements and Treasury regulations.

150.    ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires that a fiduciary with respect to a plan shall discharge their duties "solely in the interest of participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan" insofar as such documents are "consistent with" subchapters I and III of ERISA.

28

151.   The Plan Administrator Committee breached these fiduciary duties by, *inter alia*:

A.   Disloyally reducing Class members' pension benefits through application of outdated and unreasonable actuarial assumptions in violation of 29 U.S.C. § 1104(a)(1)(A), which: (i) resulted in Class members receiving less than the actuarial equivalent of their vested accrued benefit and; (ii) enabled IBM, as Plan Sponsor, to save money by reducing the amount it contributed and contributes to the Plan to fund benefits;

B.   Disloyally reducing Class members' pension benefits by using outdated and unreasonable actuarial assumptions in violation of 29 U.S.C. § 1104(a)(1)(A), which resulted in Class members receiving less than the actuarial equivalent of their vested accrued benefit and enabled IBM, as Plan Sponsor, to increase profits by reducing IBM's pension funding obligations to the Plan;

C.   Disloyally providing inaccurate and misleading information to Class members by misrepresenting that the joint and survivor annuities paid by the Plan were the actuarial equivalent of a Participant's single life annuity and by failing to tell Participants that the joint and survivor annuities—which are the default option for married participants—are worth less than the Participant's single life annuities;

D.   Failing to act prudently when determining benefits owed to Plan participants by, *inter alia*, ensuring that all benefits paid are/were in conformity with ERISA's requirements set forth in 29 U.S.C. §§ 203, 204, and 205, which caused Class members to receive less than the full value of their ERISA-protected accrued benefit and violated the Plan Administrator Committee's duty of prudence set forth at 29 U.S.C. § 1104(a)(1)(B);

29

E.  Failing to update the unreasonable and outdated assumptions applied to Class members' benefits, despite having discretionary authority under the Plan's terms to update the assumptions;

F.  Following Plan terms that violate ERISA (specifically 29 U.S.C. §§ 203, 204, and 205), which constitutes a fiduciary breach, 29 U.S.C. § 1104(a)(1)(D), and results in participants receiving less than the actuarial equivalent of their vested accrued benefit and also results in participants forfeiting a portion of their vested accrued benefit;

152.  As a direct and proximate result of these fiduciary breaches, Class members lost millions of dollars in vested accrued pension benefits.

153.  ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

154.  ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

155.  Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and § 1109(a), Plaintiff, on behalf of the Plan, seeks all available and appropriate remedies against the Plan Administrator Committee to redress and make good to the Plan all losses caused by its violations

30

of ERISA § 404, 29 U.S.C. § 1104, including but not limited to the relief to the Plan requested below in the Prayer For Relief.

156.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

157.    Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available equitable relief against the Plan Administrator Committee to redress its violations of ERISA and provide all appropriate relief to Plan participants, including but not limited to the relief requested below in the Prayer For Relief.

## VIII.  PRAYER FOR RELIEF

Plaintiffs pray that judgment be entered against Defendants on all claims and seek the following relief:

158.    A declaratory judgment that the Plan's actuarial assumptions for joint and survivor annuities applicable to the Class violate ERISA's actuarial equivalence requirement set forth in § 204(c)(3), 29 U.S.C. § 1054(c)(3) and violate ERISA's anti-forfeiture provision at § 203(a), 29 U.S.C. § 1053(a).

159.    A declaratory judgment that the Plan's actuarial assumptions for joint and survivor annuities applicable to the Class violate ERISA's joint and survivor annuity requirements set forth in § 205(a)-(d), 29 U.S.C. § 1055(a)-(d).

160.    A declaratory judgment that the Plan Administrator Committee breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, following Plan terms that violated ERISA and for failing to pay benefits to all Plan participant in conformance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

161.    Reformation of the Plan: (i) to provide that Class members receive joint and survivor annuities that are the actuarial equivalent of single life annuities; (ii) to bring the Plan into full compliance with ERISA; and (iii) to pay all benefits owed to Class members based on the reformed plan.

31

162.    An injunction ordering Defendants: (i) to accurately disclose to all Class members their optional forms of benefits as recalculated under the reformed plan, whether or not that individual has started collecting pension benefits; (ii) to eliminate and bar any future use of actuarial assumptions that result in less than the actuarial equivalent value of the participant's single life annuity at retirement; (iii) to bring the Plan into compliance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d); and (iv) to recalculate and pay all amounts owed to Class members as a result of the violations of ERISA set forth herein.

163.    An order requiring Defendants to provide an accounting of all prior payments of benefits to the Class under the Plan for which the outdated and unreasonable assumptions discussed herein were used to determine joint and survivor annuities, and provide information to recalculate those payments to Class members in compliance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

164.    Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plan and ordering Defendants to pay future benefits in accordance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

165.    Disgorgement of any benefits or profits Defendants received or enjoyed due to the violations of ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

166.    Restitution of all amounts Defendants kept in the Plan but were obliged to pay to Plaintiffs and other Class members in accordance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

167.    Surcharge from Defendants totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendants as a result of the violations of ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

168.    An order estopping Defendants from applying to the Class the actuarial assumptions that violate ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d) and requiring Defendants instead to pay benefits in accordance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d) .

169.    Relief to the Plan from the Plan Administrator Committee for its violations of ERISA § 404, 29 U.S.C. § 1104, including a declaration that the actuarial assumptions applied to Class members' joint and survivor annuities violate ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d); restoration of losses to the Plan and its participants caused by the Plan Administrator Committee's fiduciary violations; disgorgement of any benefits and

32

profits the Plan Administrator Committee received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to Class members caused by fiduciary breach so that those amounts owed can be provided to Plan participants; and all appropriate injunctive relief, such as an order requiring the Plan Administrator Committee to pay all Plan participants fully ERISA-compliant benefits in the future and to ensure that all benefits it pays to participants conform to the requirements set forth in ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

170.    An award of pre-judgment interest on any amounts awarded to Plaintiffs and the Class pursuant to law.

171.    An award of Plaintiffs' attorneys' fees, expenses and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine.

172.    An order awarding, declaring or otherwise providing Plaintiffs and the Class any other appropriate equitable relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems just and proper.

Dated: August 15, 2022

Respectfully submitted,

 /s/ Michelle C. Yau
Michael B. Eisenkraft (ME-6974)
**Cohen Milstein Sellers & Toll PLLC**
88 Pine Street ● 14th Floor
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
meisenkraft@cohenmilstein.com

Michelle C. Yau (*pro hac vice*)
Daniel R. Sutter (*pro hac vice*)
Laura Older Rockmore, (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
dsutter@cohenmilstein.com
lorockmore@cohenmilstein.com

Peter K. Stris (*pro hac vice* forthcoming)
Rachana A. Pathak (*pro hac vice* forthcoming)

33

Victor O'Connell (*pro hac vice* forthcoming)
John Stokes (*pro hac vice* forthcoming)
STRIS & MAHER LLP
777 S. Figueroa St. ● Suite 3850
Los Angeles, CA 90017
Telephone: (213) 995-6800
Fax: (213) 261-0299

Shaun P. Martin (*pro hac vice* forthcoming)
5998 Alcala Park ● Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Fax: (619) 260-7933

***Attorneys for Plaintiffs***