UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joshua Knight, Michael Campbell, and Ernest Fabrizio, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>International Business Machines Corporation, the Plan Administrator Committee, and the IBM Personal Pension Plan;<br><br>   Defendants. | Civil Action No. 7:22-cv-04592-NSR |

## REPLY IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Robert Newman
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, D.C. 20001-4956
(202) 662-5125
rnewman@cov.com

Brittney Lane Kubisch
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 243-2222
bkubisch@jonesday.com

Estefania Re
JONES DAY
600 Brickell Avenue
Suite 3300
Miami, Florida 33131
(305) 714-9817
ere@jonesday.com

Miguel Eaton
Kevin R. Noble
David T. Raimer
JONES DAY
51 Louisiana Avenue NW
Washington, D.C. 20001-2113
(202) 879-3749
meaton@jonesday.com
krnoble@jonesday.com
dtraimer@jonesday.com

Lauren N. Brown
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-3426
laurenbrown@jonesday.com

*Counsel for Defendants,*
*International Business Machines*
*Corporation, the Plan Administrator*
*Committee, and the IBM Personal Pension*
*Plan*

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| I. | PLAINTIFFS' CLAIMS ARE UNTIMELY | 1 |
| | A. The Plan's Two-Year Limitations Period Bars Plaintiffs' Statutory Claims | 1 |
| | B. Plaintiffs' Fiduciary-Breach Claims Should Also Be Dismissed as Untimely | 4 |
| II. | PLAINTIFFS' STATUTORY-VIOLATION CLAIMS FAIL | 5 |
| | A. Plaintiffs Knight and Campbell Do Not Plead a Violation of 29 U.S.C. § 1055 | 5 |
| | B. Plaintiffs Do Not Plead Violations of 29 U.S.C. § 1054(c)(3) or § 1053(a) | 5 |
| III. | PLAINTIFFS DO NOT PLEAD A VIABLE FIDUCIARY-BREACH CLAIM | 6 |
| | A. Plaintiffs Cannot Recast Statutory Violations as Fiduciary-Breach Claims | 6 |
| | B. Plaintiffs Have Not Adequately Pleaded a Misrepresentation | 9 |
| IV. | PLAINTIFFS NEEDED TO EXHAUST THEIR CLAIMS | 9 |
| CONCLUSION | | 10 |

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bilello v. JPMorgan Chase Ret. Plan*,
607 F. Supp. 2d 586 (S.D.N.Y. 2009) ............................................................................... 1, 3

*DuBuske v. PepsiCo, Inc.*,
No. 18 CV 11618, 2019 WL 4688706 (S.D.N.Y. Sept. 25, 2019) ...................................... 5, 6

*Faciane v. Sun Life Assurance Co. of Canada*,
No. 17-cv-17429, 2018 WL 3391594 (E.D. La. July 12, 2018) .............................................. 4

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
571 U.S. 99 (2013) .................................................................................................................. 4

*Kendall v. Emps. Ret. Plan of Avon Prods.*,
561 F.3d 112 (2d Cir. 2009) ............................................................................................... 7, 8

*Laurent v. PricewaterhouseCoopers LLP*,
No. 06-CV-2280, 2018 WL 502239 (S.D.N.Y. Jan. 19, 2018) ............................................... 7

*Manginaro v. Welfare Fund of Loc. 771, I.A.T.S.E.*,
21 F. Supp. 2d 284 (S.D.N.Y. 1998) ...................................................................................... 3

*Masten v. Metro. Life Ins. Co.*,
543 F. Supp. 3d 25 (S.D.N.Y. 2021) .............................................................................. 1, 5, 10

*McCulloch v. Bd. of Trs. of SEIU Affiliates Officers & Emps. Pension Plan*,
No. 14 CIV. 9348, 2016 WL 9022578 (S.D.N.Y. Mar. 31, 2016) ........................................ 10

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993) ................................................................................................................ 8

*New York State Psychiatric Ass'n v. UnitedHealth Grp.*,
798 F.3d 125 (2d Cir. 2015) ............................................................................................... 7, 8

*Novella v. Westchester Cnty.*,
661 F.3d 128 (2d Cir. 2011) ................................................................................................... 4

*Park v. Trs. of 1199 SEIU Health Care Emps. Pension Fund*,
418 F. Supp. 2d 343 (S.D.N.Y. 2005) .................................................................................. 10

*Role v. Johns Hopkins Bayview Med. Ctr.*,
No. 06 CV 2475, 2008 WL 465574 (E.D.N.Y. Feb. 15, 2008) ............................................ 10

*Sec'y of Lab. v. Macy's, Inc.*,
No. 17-CV-541, 2022 WL 407238 (S.D. Ohio Feb. 10, 2022) .............................................. 7

*Tibble v. Edison Int'l*,
575 U.S. 523 (2015) ................................................................................................................ 8

*Travelers Indem. Co. v. Northrop Grumman Corp.*,
956 F. Supp. 2d 494 (S.D.N.Y. 2013) .................................................................................... 3

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**STATUTES**

26 U.S.C. § 401 ............................................................................................................................. 8

29 U.S.C. § 1053 ........................................................................................................................ 5, 6

29 U.S.C. § 1054 ........................................................................................................................ 5, 6

29 U.S.C. § 1055 ........................................................................................................................... 5

29 U.S.C. § 1104 ........................................................................................................................... 8

**OTHER AUTHORITIES**

Restatement (Second) of Trusts § 166 (1959) .............................................................................. 8

As Defendants have explained, the FAC is both untimely and legally flawed. Documents integral to the FAC show that the applicable limitations periods ran long before Plaintiffs filed suit. Moreover, Plaintiffs have failed to adequately plead their claims—much less comply with the Plan's exhaustion requirements. Nothing in Plaintiffs' opposition changes this reality.

I.      **PLAINTIFFS' CLAIMS ARE UNTIMELY.**

     A.      **The Plan's Two-Year Limitations Period Bars Plaintiffs' Statutory Claims.**

Plaintiffs admit that the Plan's two-year limitations period applies to their statutory claims and do not dispute that the length of this limitations period is reasonable. Opp. 9. That should be the end of the matter. Because documents integral to or incorporated in the FAC show Plaintiffs "knew or should have known of the material facts on which [their] claim[s] . . . [are] based," more than two years before they filed suit, Ex. A at 39, § 7.2(a)(2)(C); Ex. B at 38, § 7.2(a)(2)(D), their claims are barred. Mot. 9–10 & n.6. Plaintiffs' efforts to argue otherwise fail.

*First*, Plaintiffs maintain that Defendants' statute of limitations defense improperly rests on facts not found on the face of the FAC, which does not itself "plead the relevant dates." Opp. 6–7. But, presumably to avoid precisely this kind of artful pleading, courts routinely rely on documents integral to or incorporated in a complaint to dismiss on statute of limitations grounds. *E.g.*, *Bilello v. JPMorgan Chase Ret. Plan*, 607 F. Supp. 2d 586, 594–97 (S.D.N.Y. 2009); *Masten v. Metro. Life Ins. Co.*, 543 F. Supp. 3d 25, 38 (S.D.N.Y. 2021). As numerous cases Defendants cite—which Plaintiffs make no effort to distinguish—make clear, plan documents, SPDs, and benefit election forms are integral to ERISA claims akin to the ones made here. Mot. 5–6 & nn.1, 3–4. And Plaintiffs concede the FAC relies on the projection statements, making those integral to their claims. Opp. 7, 23; Mot. 6 & n.3. To be sure, these documents could not be

considered if their "relevance" or "accuracy" were disputed. Opp. 6. But that is not the case here as Plaintiffs nowhere explain how the cited documents are irrelevant or inaccurate.

*Second*, Plaintiffs argue that even if the Court could consider these documents, they do not adequately disclose the basis for their claims. Opp. 10–12. Nonsense. Whether or not Plaintiffs were "aware of the legal theory underlying the[ir] claim[s]," the Plan's limitations period began to run as soon as they knew or should have known the "material facts" on which their action is based. Ex. A at 39, § 7.2(a)(2)(C); Ex. B. at 38, § 7.2(a)(2)(D). Even giving that standard a capacious reading, the material facts here are that the Plan converted benefits to different forms using actuarial assumptions, Plaintiffs' annuities were calculated using an "8% interest [rate] and … the UP-1984 mortality table" with adjustments, and different actuarial assumptions could "impact" the value of their benefits. *E.g.*, Ex. E at 8; *see also* Ex. C at 59, 64–65. All of these facts—plus an invitation to inquire further—were provided to Plaintiffs more than two years before this litigation commenced in projection statements they *admit* they received, read, and relied upon. Opp. 23; Mot. 6, 9–10. And were that not enough, this same information was disclosed in the SPD and the Plan itself. Mot. 6, 10 n.6.

Plaintiffs argue that they could not have known the actuarial standards disclosed in the projection statements were the Plan's, because Treasury regulations allow Defendants to employ any "reasonable" assumptions for purposes of the relative value calculation. Opp. 8, 11–12. Maybe so, but that is not what Defendants did here: there is no dispute that the actuarial assumptions disclosed in the projection statements are the Plan's. Indeed, Plaintiff Campbell's statement said as much. *See* Ex. I at 10 ("Any protected Prior Plan based qualified pension benefit payable in an annuity form is determined using an interest rate of 8% and average life expectancies based on the UP-1984 mortality table . . . ."). Moreover, the "should[-]have[-]

2

known [test] is an objective one—based on a reasonable person standard," *Travelers Indem. Co. v. Northrop Grumman Corp.*, 956 F. Supp. 2d 494, 509 (S.D.N.Y. 2013). And where, as here, the projection statements provided an "estimate[] [of a participant's] benefits payable from the Plan" based on their "actual pension-eligible earnings," *e.g.*, Ex. E at 1, 8, a reasonable participant could not help but conclude that the stated actuarial assumptions were the Plan's. Plaintiffs can hardly argue otherwise, given their concession that they understood the projection statements to detail "the amount of retirement benefits they would receive under various forms of retirement benefit[s]," FAC ¶ 97, and to "calculate[] the value of [those] benefits using the Plan's outdated and unreasonable actuarial assumptions," FAC ¶ 98. To suggest that a reasonable participant would draw a different conclusion based on a complex regulation referenced nowhere in the projection statements is not tenable.

In any event, Plaintiffs do not dispute that the Plan's actuarial assumptions were adequately disclosed in the SPD, which is enough to charge them with constructive knowledge of those assumptions under the should-have-known standard. Mot. 6, 10 n.6. "[A] clear description in the SPD put[s participants] on notice of that plan's terms," *Bilello*, 607 F. Supp. 2d at 593–94, and a participant need not have read the SPD to have constructive knowledge of its contents, *see Manginaro v. Welfare Fund of Loc. 771, I.A.T.S.E.*, 21 F. Supp. 2d 284, 296, 299 (S.D.N.Y. 1998) (provisions of an SPD give participants adequate notice of Plan terms even if the participant does not read them). Disclosure in the SPD is thus independently fatal to Plaintiffs' statutory claims.

*Finally*, Plaintiffs argue that the Plan's accrual rule is unreasonable—and thus unenforceable—because it is not identical to the Second Circuit's standard. Opp. 9–10. Not so. A Plan's rule for accrual need not be identical to the accrual rule applicable under the common law.

3

*Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 106 (2013). And regardless, Plaintiffs attack a straw man. Defendants have never argued for a "bright line" rule that triggers the limitations period upon the disclosure of "*some* information on which the claim is . . . based." Opp. 9. The limitations period under the Plan begins to run from "the earliest date on which the claimant knew or should have known of the *material facts* on which [the claim] is based." Ex. A at 39, § 7.2(a)(2)(C); Ex. B. at 38, § 7.2(a)(2)(D) (emphasis added). This standard is similar to the Second Circuit's accrual rule and entirely reasonable. *Novella v. Westchester Cnty.*, 661 F.3d 128, 147 (2d Cir. 2011) (explaining that "the statute of limitations will start to run . . . when there is enough information available to the pensioner to assure that he knows or reasonably should know" of the basis for his claim). Moreover, as detailed above, *supra* pp. 2–3, understanding the basis for Plaintiffs' claims—e.g., that the Plan used an 8% interest rate and the UP-1984 mortality table as the basis for its actuarial assumptions—did not require "complicated actuarial math" or "a heroic chain of deductions," Opp. 11–12. Rather, it was "readily . . . discoverable from information furnished to pensioners by the pension plan." *Novella*, 661 F.3d at 147 n.22, which, among other things, provided "an explanation of *how* the [benefit] payments were calculated," *Faciane v. Sun Life Assurance Co. of Canada*, No. 17-cv-17429, 2018 WL 3391594, at *5 (E.D. La. July 12, 2018) (applying *Novella*), *aff'd*, 931 F.3d 412 (5th Cir. 2019). That being the case, Plaintiffs' statutory claims are untimely under either the Plan or the common law test.

   **B. Plaintiffs' Fiduciary-Breach Claims Should Also Be Dismissed as Untimely.**

  Plaintiffs do not dispute that Plaintiff Knight's fiduciary breach claims are untimely under ERISA's six-year standard, and thus those claims must be dismissed. Mot. 12; Opp. 13. The other Plaintiffs' claims are also untimely because the only reasonable inference from the facts detailed above is that they read their projection statements and thus had actual knowledge of the alleged breach (i.e., use of the allegedly outdated actuarial assumptions) more than three

years before filing this action. Mot. 11–12; *supra* pp. 2–3. On similar facts, the *Masten* court concluded that it could "reasonably infer that [a participant] had knowledge of [an identical] alleged fiduciary breach." 543 F. Supp. 3d at 38. Though Plaintiffs discuss the actual knowledge standard, they make no effort to explain why it is not met here or to distinguish *Masten*.

## II.   PLAINTIFFS' STATUTORY-VIOLATION CLAIMS FAIL.

### A.   Plaintiffs Knight and Campbell Do Not Plead a Violation of 29 U.S.C. § 1055.

Section 1055(d) requires only that a plan offer one qualified joint and survivor annuity and one qualified optional survivor annuity, which are the 50% and 75% options in this Plan. Mot. 13. Plaintiffs now argue that their 80% and 100% joint and survivor annuities are covered by § 1055(d) because they have "the effect" of a qualified annuity. Opp. 13–15 (quoting 29 U.S.C. § 1055(d)). But Plaintiffs' entire theory of the case is premised on the notion that their elections do not have "the effect" of a qualified annuity, i.e., they are not "the actuarial equivalent of a single [life] annuity." 29 U.S.C. § 1055(d). They cannot have it both ways. If Plaintiffs believe the 80% and 100% annuities they elected are not actuarially equivalent to a single life annuity, they cannot simultaneously claim they fall under § 1055(d). Plaintiffs also argue those options must be qualified because no spousal consent was required to elect them, Opp. 14–15, but spousal consent is not part of the definition of a qualified annuity under § 1055(d) (and the FAC does not allege otherwise).[1]

### B.   Plaintiffs Do Not Plead Violations of 29 U.S.C. § 1054(c)(3) or § 1053(a).

The question under § 1054(c)(3) and § 1053(a) is whether the challenged assumptions "result in benefits that are not actuarially equivalent to the retirement benefit[s] [a plaintiff] would have received at [normal retirement age (age 65)]." *DuBuske v. PepsiCo, Inc.*, No. 18 CV

---

[1] Even accepting Plaintiffs' spousal-consent test, at least Plaintiff Campbell's claims must be dismissed because his spouse consented to his form of distribution. Ex. J at 5.

5

11618, 2019 WL 4688706, at *4 n.4 (S.D.N.Y. Sept. 25, 2019); Mot. 13–14. Plaintiffs concede this point as to § 1054(c)(3), Opp. 15, and it applies equally to § 1053(a), which also protects the benefit due at normal retirement age, *DuBuske*, 2019 WL 4688706, at *4 & n.4. Accordingly, Plaintiffs must allege a deprivation of benefits to which they would have been entitled at age 65. Mot. 14. Plaintiffs claim to have done so, Opp. 16, but the cited paragraph refers only to a *hypothetical* "age 65 retiree," FAC ¶ 76. The FAC nowhere compares Plaintiffs' *actual* benefits with their age 65 single life annuities—a striking omission given their inclusion of comparisons to the value of their single life annuities at retirement. *Id.* ¶¶ 25–27, 75, 122.

### III.    PLAINTIFFS DO NOT PLEAD A VIABLE FIDUCIARY-BREACH CLAIM.

#### A.    Plaintiffs Cannot Recast Statutory Violations as Fiduciary-Breach Claims.

As Defendants explained, Plaintiffs cannot repackage statutory violations as fiduciary-breach claims. Mot. 15–20. Plaintiffs do not deny that is precisely what they are doing. Instead, they double down on their theory that any time plan terms violate ERISA, a fiduciary breaches its duties by failing to amend or deviate from those terms. Opp. 18–21. But no such duties exist.

*First*, Plaintiffs suggest that the Plan itself imposed a duty on the PAC to "determine whether one form of income under the Plan is the Actuarial Equivalent of another form" and "to incorporate changes required by law." Opp. 18. Neither of these powers is relevant to Plaintiffs' claims. As an initial matter, the power to determine whether benefits are "Actuarial Equivalent[s]" only applied prior to October 25, 2005—that is, before Plaintiffs applied for benefits. Ex. A at 31–33, art. 5A. Regardless, "Actuarial Equivalent" is a defined term, and the power to determine if two forms of benefit are "Actuarial Equivalent[s]" is merely the power to apply the Plan's stated actuarial assumptions. *E.g.*, Ex. A at 176, § A-4.2(e).

The power to "incorporate" changes required by law is similarly unhelpful to Plaintiffs. After all, they do not dispute that the Plan's actuarial assumptions can be changed only by formal

6

amendment. Mot. 16–17. Indeed, they propose no other way the PAC could theoretically remedy their claims. Amending a plan, however, is inherently non-fiduciary—even when performed by an entity (like the PAC) that at times wears a fiduciary "hat[]." Mot. 16. Thus, even assuming the power to incorporate changes required by law extends beyond the *administration* of the Plan to formal amendment of its terms, *but see*, *e.g.*, Ex. A at 42, art. 8; Ex. A at 18, 34–36 § 2.49 & art. 5B (expressly giving relevant amendment power to entities other than the PAC), Plaintiffs' claim of fiduciary breach necessarily fails.[2]

*Second*, Plaintiffs insist that "a general fiduciary duty to comply with ERISA" required the PAC to deviate from the Plan's stated actuarial assumptions. Opp. 18–19. But as Defendants explained, there is no such duty. Mot. 18–19 & n.10. Plaintiffs' contrary assertion rests on dicta. *New York State Psychiatric Ass'n v. UnitedHealth Group*, 798 F.3d 125 (2d Cir. 2015), involved a claim that the plan's administrator violated its fiduciary duties and ERISA's statutory requirements by "*breach*[*ing*] the terms of the . . . Plan"; it had no occasion to decide whether a fiduciary must deviate from Plan terms that allegedly violate ERISA, *id.* at 131. Likewise, the only issue for the court in *Kendall v. Employees Retirement Plan of Avon Products*, 561 F.3d 112 (2d Cir. 2009) was whether a plaintiff has standing to sue for fiduciary breach that did not harm her, *id.* at 120–21. Not surprisingly, therefore, courts have repeatedly held that these cases simply do not speak to whether fiduciaries have a general duty to deviate from plan terms that violate ERISA.[3]

---

[2] To the extent the scope of these powers are unclear and relevant to Plaintiffs' claims, this is a reason that Plaintiffs needed to exhaust. *Infra* pp. 9–10.

[3] *Laurent v. PricewaterhouseCoopers LLP*, No. 06-CV-2280, 2018 WL 502239, at *3 (S.D.N.Y. Jan. 19, 2018) (rejecting plaintiff's argument that *UnitedHealth Group* and *Kendall* found a fiduciary duty to deviate from plan terms that violate ERISA), *overruled on other grounds*, 945 F.3d 739 (2d Cir. 2019); *Sec'y of Lab. v. Macy's, Inc.*, No. 17-CV-541, 2022 WL 407238, at *10 (S.D. Ohio Feb. 10, 2022) (noting that *UnitedHealth Group* and *Kendall* "offer

7

Plaintiffs also argue that *Tibble v. Edison International*, 575 U.S. 523 (2015), recognized "a fiduciary's ongoing obligation to ensure that an ERISA plan complies with the law." Opp. 20. But *Tibble* did not address a fiduciary's duty to deviate from Plan terms, as no deviation was required in that case: The Plan there delegated the power to select and change the investment lineup to the plan's fiduciaries. *See* Br. of U.S. at 3, *Tibble*, 575 U.S. 523 (No. 13-550), 2014 WL 6984131. *Tibble* held only that when managing a plan's investments, a fiduciary's express statutory duty of *prudence* includes "a continuing duty to monitor investments and remove imprudent ones." *Tibble*, 575 U.S. at 530. It thus has nothing to say about a purported freestanding fiduciary duty to deviate from plan terms—let alone terms that specify who receives benefits and how much, as these determinations are squarely plan-sponsor functions. Mot. 16.

*Finally*, without any support for their freestanding duty-to-deviate in the text of ERISA or precedent, Plaintiffs resort to the common law of trusts. But the Supreme Court has repeatedly warned against supplementing ERISA with common-law duties not found in the statute—particularly where there is good reason to view Congress' omission as deliberate.[4] *E.g.*, *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251–62 (1993) (holding that ERISA did not incorporate all trust-law remedies and that to add remedies risked disturbing Congress's balance of policy considerations); Mot. 19–20. This is all the more true where the proposed duty could induce fiduciaries to violate 26 U.S.C. § 401(a)(25). Mot. 16–17 (explaining that this provision requires actuarial assumptions to be specified in the plan and changed by formal amendment).

---

no discussion or reasoning to support" a purported duty to deviate and that "district courts in the Second Circuit [do] not" "interpret *UnitedHealth* or *Kendall*" to recognize such a duty).

[4] The Restatement in effect when ERISA was enacted included two separate rules: (1) a trustee has no duty to comply with illegal trust terms and (2) a trustee has a duty not to comply with terms he knew or should know were illegal (in some situations). *See* Restatement (Second) of Trusts § 166 (1959). Congress incorporated the former, but not the latter. *See* 29 U.S.C. § 1104(a)(1)(D).

### B. Plaintiffs Have Not Adequately Pleaded a Misrepresentation.

Plaintiffs' misrepresentation claim hinges on the allegation that their projection statements misleadingly stated that their joint and survivor annuities were "actuarial[ly] equivalent" to their single life annuities. FAC ¶ 151.C; Opp. 23. Yet as Defendants explained, the projection statements were clear about the specific actuarial assumptions employed, and also noted that other assumptions could produce different results. Mot. 22. Given this clarifying information, Plaintiffs have not explained how Defendants' representations were misleading—particularly given their admission that even experts can disagree about the meaning of "actuarial equivalence." Opp. 12. Their misrepresentation claim thus fails under any standard.

## IV. PLAINTIFFS NEEDED TO EXHAUST THEIR CLAIMS.

As Defendants explained, Plaintiffs' theory of fiduciary breach rests on the allegation that the PAC had both the obligation and the power to remedy the Plan's purportedly illegal use of outdated actuarial assumptions. And as Defendants further explained, if this is so, then Plaintiffs were required to exhaust their claims with the PAC before coming to court. *See* Mot. 23–24.

Plaintiffs ignore the implications of their allegations entirely, pointing instead to a litany of cases showing that, in the ordinary course, courts within the Second Circuit have not required exhaustion of statutory claims. Opp. 24. As Defendants explained (and Plaintiffs do not attempt to rebut), those cases are premised on the notion that exhaustion would be futile, because plan administrators would be ill-suited to redress the claims at issue. Mot. 24. Here, however, Plaintiffs argue the PAC could have—and should have—changed the Plan's actuarial assumptions to provide benefits allegedly due to them. Opp. 23–24. And where the fiduciary ostensibly has the power to provide a remedy—e.g., a miscalculation of benefits claim—courts

9

routinely require exhaustion, even if the underlying claims are statutory.[5] Mot. 24. At the least, Plaintiffs' claims involve questions regarding the scope of the PAC's powers under the Plan to change the actuarial-equivalence calculation. Opp. 18. For that reason alone exhaustion should be required. *E.g.*, *McCulloch v. Bd. of Trs. of SEIU Affiliates Officers & Emps. Pension Plan*, No. 14 CIV. 9348, 2016 WL 9022578, at *6–7 (S.D.N.Y. Mar. 31, 2016) (requiring exhaustion where statutory claim turned partially on interpretation of plan terms).

Plaintiffs argue that, at any rate, the Plan itself does not require exhaustion in these circumstances. Opp. 24–25. But the Plan clearly states that any "Applicable Claim"—defined to include efforts "to recover benefits allegedly due . . . by reason of any law"—must be exhausted. *See* Ex. A at 38–39, § 7.2(a)–(b).[6] And Plaintiffs plainly seek benefits purportedly due to them under ERISA. Plaintiffs also suggest that the PAC could not remedy their claims, Opp. 24, but that could only be true if the PAC had no power or obligation to change the Plan's actuarial assumptions, *but see id.* at 18. Again, Plaintiffs cannot have it both ways. Either the PAC had no power to change the Plan's actuarial assumptions and Plaintiffs' fiduciary-breach claims fail, or the PAC did have the power and Plaintiffs needed to exhaust their claims before filing suit.

## CONCLUSION

For these reasons, the FAC should be dismissed in its entirety.

---

[5] In fact, several cases cited by Plaintiffs affirm this rule. *E.g.*, *Park v. Trs. of 1199 SEIU Health Care Emps. Pension Fund*, 418 F. Supp. 2d 343, 357 (S.D.N.Y. 2005); *Role v. Johns Hopkins Bayview Med. Ctr.*, No. 06 CV 2475, 2008 WL 465574, at *4 (E.D.N.Y. Feb. 15, 2008); *McCulloch v. Bd. of Trs. of SEIU Affiliates Officers & Emps. Pension Plan*, No. 14 CIV. 9348, 2016 WL 9022578, at *6–7 (S.D.N.Y. Mar. 31, 2016).

[6] This distinguishes *Masten*, Opp. 24, where defendants did not identify "administrative processes that would allow Plaintiffs to adjudicate their claims." 543 F. Supp. 3d at 38.

Dated: January 18, 2023

Robert Newman
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, D.C. 20001-4956
(202) 662-5125
rnewman@cov.com

Brittney Lane Kubisch
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
(213) 243-2222
bkubisch@jonesday.com

Estefania Re
JONES DAY
600 Brickell Avenue
Suite 3300
Miami, Florida 33131
(305) 714-9817
ere@jonesday.com

Respectfully submitted,

*/s/ Miguel Eaton*

Miguel Eaton
Kevin R. Noble
David T. Raimer
JONES DAY
51 Louisiana Ave, N.W.
Washington, D.C. 20001-2113
(202) 879-3749
meaton@jonesday.com
krnoble@jonesday.com
dtraimer@jonesday.com

Lauren N. Brown
JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-3426
laurenbrown@jonesday.com

*Counsel for Defendants, International Business Machines Corporation, the Plan Administrator Committee, and the IBM Personal Pension Plan*

## CERTIFICATE OF SERVICE

I, Miguel Eaton, certify that on January 18, 2023, I caused the foregoing Reply in Support of Defendants Motion to Dismiss the Amended Complaint to be served upon all counsel of record via electronic service pursuant to Federal Rule of Civil Procedure Rule 5(b)(2)(E).

Dated: January 18, 2023

*/s/ Miguel Eaton*
Miguel Eaton
JONES DAY
51 Louisiana Ave, N.W.
Washington, D.C. 20001-2113
(202) 879-3749
meaton@jonesday.com

*Counsel for Defendants,*
*International Business Machines*
*Corporation, the Plan Administrator*
*Committee, and the IBM Personal Pension*
*Plan*