**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Joshua Knight, Michael Campbell, and Ernest Fabrizio, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

International Business Machines Corporation, the Plan Administrator Committee, and the IBM Personal Pension Plan,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Case No. 7:22-cv-04592-NSR

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS


INTRODUCTION .......... 1

BACKGROUND .......... 3

ARGUMENT .......... 5

I. Defendants cannot obtain dismissal based on the statute of limitations. .......... 5
   A. Defendants' affirmative defense should be rejected at this stage because it relies on disputed fact questions outside the scope of the complaint. .......... 5
   B. In any event, Plaintiffs' claims are timely. .......... 8
      1. Plaintiffs' claims asserting statutory violations are timely under the Plan's two-year statute of limitations. .......... 9
         (a) The Plan's accrual language should be interpreted as consonant with the Second Circuit's accrual holdings. .......... 9
         (b) Under the proper accrual standard, Plaintiffs' claims are timely. .......... 10
      2. Plaintiffs' fiduciary breach claims (Count IV) are timely under the limitations period set forth in 29 U.S.C. § 1113. .......... 13

II. Plaintiffs have properly stated claims under 29 U.S.C. §§ 1055, 1054, and 1053. .......... 13
   A. Because each joint and survivor annuity the Plan offers is subject to ERISA's actuarial equivalence requirement, all Plaintiffs state claims under § 1055. .......... 13
   B. Plaintiffs state claims under § 1054 (Count II) and § 1053 (Count III). .......... 15
      1. 29 U.S.C. § 1054 ensures that participants who do not retire at normal retirement age receive actuarially equivalent benefits. .......... 15
      2. As other courts have recognized, 29 U.S.C. § 1053 protects a participant's accrued benefit at whatever point she retires. .......... 16

III. Plaintiffs have stated claims in Count IV for breach of fiduciary duty. .......... 18
   A. Under squarely on point Second Circuit authority, Plaintiffs have stated claims for breach of fiduciary duty based on Defendants' statutory violations. .......... 18
   B. Plaintiffs have stated fiduciary breach claims based on Defendants' inaccurate and misleading statements about the equivalence of Plaintiffs' benefits. .......... 21

IV. Plaintiffs had no duty to exhaust their claims alleging statutory violations or breach of fiduciary duty based on those violations. .......... 23

CONCLUSION .......... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)....................6

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011)....................8

*Contilli v. Loc. 705 Int'l Bhd. of Teamsters Pension Fund*,
559 F.3d 720 (7th Cir. 2009)....................17, 19

*Cruz v. Raytheon Co.*,
435 F. Supp. 3d 350 (D. Mass. 2020)....................3

*De Pace v. Matsushita Elec. Corp. of Am.*,
257 F. Supp. 2d 543 (E.D.N.Y. 2003)....................26

*Diamond v. Loc. 807 Lab.-Mgmt. Pension Fund*,
2014 WL 527898 (E.D.N.Y. Feb. 7, 2014), *aff'd*, 595 F. App'x. 22 (2d Cir. 2014)....................26

*Eddy v. Colonial Life Ins. Co. of Am.*,
919 F.2d 747 (D.C. Cir. 1990)....................23

*Falberg v. Goldman Sachs Grp., Inc.*,
2020 WL 3893285 (S.D.N.Y. July 9, 2020)....................26

*Faulkner v. Beer*,
463 F.3d 130 (2d Cir. 2006)....................6

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
571 U.S. 99 (2013)....................9, 11

*Herndon v. Huntington Ingalls Indus. Admin. Comm.*,
2020 WL 5809965 (E.D. Va. Aug. 28, 2020)....................13

*Herndon v. Huntington Ingalls Indus., Inc.*,
2020 WL 3053465 (E.D. Va. Feb. 20, 2020)....................3

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
140 S. Ct. 768 (2020)....................14

*Janese v. Fay*,
692 F.3d 221 (2d Cir. 2012) (cited Mot. )....................24

*Kendall v. Emps. Ret. Plan of Avon Prod.*,
561 F.3d 112 (2d Cir. 2009)....................5, 20

*Kenseth v. Dean Health Plan, Inc.*,
722 F.3d 869 (7th Cir. 2013)....................23

*Masten v. Metro. Life Ins. Co.*,
543 F. Supp. 3d 25 (S.D.N.Y. 2021)....................2, 15, 19, 26

*McCulloch v. Bd. of Trs. of SEIU Affiliates Officers and Emps. Pension Plan*,
2016 WL 9022578 (S.D.N.Y. Mar. 31, 2016), *aff'd*, 686 F. App'x 68 (2d Cir. 2017)....................26

*Nechis v. Oxford Health Plans, Inc.*,
421 F.3d 96 (2d Cir. 2005)....................25

*New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*,
798 F.3d 125 (2d Cir. 2015)....................5, 20

*Novella v. Westchester Cnty.*,
661 F.3d 128 (2d Cir. 2011).................... *passim*

*OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*,
503 F. Supp. 2d 490 (D. Conn. 2007)....................7

*Osberg v. Foot Locker, Inc.*,
862 F.3d 198 (2d Cir. 2017).................... *passim*

*Park v. Trs. of 1199 SEIU Health Care Emps. Pension Fund*,
418 F. Supp. 2d 343 (S.D.N.Y. 2005)....................25

*Roe v. Empire Blue Cross Blue Shield*,
2014 WL 1760343 (S.D.N.Y. May 1, 2014), *aff'd*, 589 F. App'x 8 (2d Cir. 2014)....................21

*Role v. Johns Hopkins Bayview Med. Ctr.*,
2008 WL 465574 (E.D.N.Y. Feb. 15, 2008)....................25

*Savage v. Sutherland Glob. Servs., Inc.*,
521 F. Supp. 3d 308 (W.D.N.Y. 2021)....................25, 26

*Scott v. AT&T, Inc.*,
No. 3:20-cv-07094, ECF No. 47 (N.D. Cal. Apr. 18, 2022)....................2, 3

*Sec. & Exch. Comm'n v. Fiore*,
416 F. Supp. 3d 306 (S.D.N.Y. 2019)....................6, 7

*SEC v. Cap. Gains Rsch. Bureau, Inc.*,
375 U.S. 180 (1963)....................23

*Shamoun v. Bd. of Trs.*,
357 F. Supp. 2d 598 (E.D.N.Y. 2005) ....................26

*Smith v. U.S. Bancorp*,
2019 WL 2644204 (D. Minn. June 27, 2019)....................3, 19

*Sullivan-Mestecky v. Verizon Commc'ns Inc.*,
961 F.3d 91 (2d Cir. 2020)....................16, 23

*Todd v. Oppenheimer & Co.*,
78 F.R.D. 415 (S.D.N.Y. 1978) ....................24

*Torres v. Am. Airlines, Inc.*,
416 F. Supp. 3d 640 (N.D. Tex. 2019) ....................3, 19

*Urlaub v. CITGO Petroleum Corp.*,
2022 WL 523129 (N.D. Ill. Feb. 22, 2022) ....................2, 18, 19

*Walker v. Accenture PLC*,
511 F. Supp. 3d 169 (D. Conn. 2020)....................6

**STATUTES**

29 U.S.C. § 1002(21) ....................19

29 U.S.C. § 1002(22) ....................18

29 U.S.C. § 1053 .................... *passim*

29 U.S.C. § 1054 .................... *passim*

29 U.S.C. § 1055 .................... *passim*

29 U.S.C. § 1104....................5, 20

29 U.S.C. § 1113....................9, 13, 14, 24

29 U.S.C. § 1132....................4, 5, 13

29 U.S.C. § 1185a(a)(3)(A) ....................20

**OTHER AUTHORITIES**

26 C.F.R. § 1.401(a)-20 ....................15

26 C.F.R. § 1.411(a)-4(a)....................17

26 C.F.R. § 1.417(a)(3)(c) ....................8, 12

Restatement (Third) of Trusts § 72 (2007) ....................22

Fed. R. Civ. P. 9(b) ....................24

Brief for the U.S., *Tibble v. Edison*, No. 13-550, 2014 WL 6984131 (Dec. 9, 2014) ....................21

## INTRODUCTION

When Congress passed ERISA, it was concerned that because pension payments normally end once the worker dies, many spouses (and their dependent children) were left penniless—and reliant on government Social Security benefits—after the working spouse died. For this reason, ERISA requires companies that offer pensions to: (1) offer all married workers a "joint and survivor annuity" ("JSA") that ensures that a surviving spouse will continue to receive pension payments even after the spouse's death, and (2) make these JSAs the default pension benefit for married workers. 29 U.S.C. § 1055. Married workers cannot receive a different form of benefit unless the worker and spouse both agree in writing to waive their entitlement to a JSA. *Id*.

Congress also understood that companies might shortchange families when calculating the amount of JSAs. Because JSAs by definition promise benefits for the duration of two lives (the worker and spouse)—whereas single life annuities ("SLAs") only pay pensions during the life of the worker—the monthly payments from JSAs are necessarily slightly lower than the monthly payments from equivalent SLAs. That is because lower payments over two lives may be "actuarially equivalent" to—have the same expected value as—larger payments over a single life.

But some companies fudge these numbers by reducing JSA payments so much that they no longer have the same expected value as an SLA. To prevent this, Congress repeatedly commanded that JSAs offered to married employees must be "actuarially equivalent" to SLAs. *See* 29 U.S.C. §§ 1053, 1054, 1055. Plaintiffs allege that Defendants violated those requirements here.

Plaintiffs Joshua Knight, Michael Campbell, and Ernest Fabrizio worked for IBM for 34 years, 45 years, and 38 years respectively. First Amended Complaint, ECF No. 23 (hereinafter "the Complaint" or "FAC") ¶¶ 25-27. Today, they receive JSAs that are subject to ERISA's actuarial equivalence protections. But Defendants calculated their benefits using mortality assumptions more than four decades out of date. As a result, Defendants have reduced Plaintiffs' payments so

that they no longer have the same expected value as the SLA. Plaintiffs accordingly assert claims under the three provisions of ERISA that protect the actuarial equivalence of their JSAs: Sections 1055 (Count I), 1054 (Count II), and 1053 (Count III). They also assert a breach of fiduciary duty claim based on these statutory violations and certain inaccurate and misleading statements made by Defendants (Count IV). Defendants' motion to dismiss these claims is groundless.

First, Defendants' statute of limitation defense—which relies on over 700 pages of material outside the complaint—is premature. And in any event, Defendants propose an accrual standard that the Second Circuit has rejected as unreasonable. In the Second Circuit, ERISA claims accrue "when there is enough information available to the pensioner to assure that he knows or reasonably should know of the miscalculation." *Novella v. Westchester Cnty.*, 661 F.3d 128, 147 (2d Cir. 2011). "[B]right-line" rules—like Defendants' proposal that the clock starts upon receipt of any benefit statement that, it later turns out, contains information relevant to a claim, "regardless of the complexity of the calculations"—are "too harsh." *Id.* at 146. And under the Second Circuit's "reasonableness approach," benefit statements involving complex actuarial calculations, like those at issue here, do not start the limitations clock. *Osberg v. Foot Locker, Inc.*, 862 F.3d 198, 206 (2d Cir. 2017). Properly understood, Plaintiffs' claims are timely.

On the merits, Defendants notably do *not* challenge, at least "for now," the critical underlying allegation that the Plan fails to provide actuarially equivalent benefits. Mot. to Dismiss at 2 (hereinafter "Mot."). And the arguments they do assert have variously been rejected in this Circuit and numerous other courts in upholding claims just like Plaintiffs' here. *See Masten v. Metro. Life Ins. Co.*, 543 F. Supp. 3d 25, 35-37 (S.D.N.Y. 2021); *Urlaub v. CITGO Petroleum Corp.*, 2022 WL 523129 (N.D. Ill. Feb. 22, 2022); *Scott v. AT&T, Inc.*, No. 3:20-cv-07094, ECF No. 47 (N.D. Cal. Apr. 18, 2022) (denying first motion to dismiss from bench); *Scott*, 2022 WL

2342645 (N.D. Cal. June 29, 2022) (order denying second motion to dismiss as to claims asserted on behalf of plan); *Herndon v. Huntington Ingalls Indus., Inc.*, 2020 WL 3053465 (E.D. Va. Feb. 20, 2020); *Cruz v. Raytheon Co.*, 435 F. Supp. 3d 350 (D. Mass. 2020); *Torres v. Am. Airlines, Inc.,* 416 F. Supp. 3d 640 (N.D. Tex. 2019); *Smith v. U.S. Bancorp*, 2019 WL 2644204 (D. Minn. June 27, 2019). Plaintiffs respectfully request that the Court deny Defendants' motion.

## BACKGROUND

**I.** This case involves the assumptions used to calculate the retirement benefits for IBM's longest-serving employees, those who joined the company and became Plan participants before July 1, 1999. Plaintiffs Joshua Knight, Michael Campbell, and Ernest Fabrizio worked for IBM for 34 years, 45 years, and 38 years respectively. FAC ¶¶ 25-27. When they retired, each elected to receive their pension as a Joint and Survivor Annuity, or JSA: a monthly benefit for the remainder of their lives, and then a continued monthly benefit to their spouse (if their spouse survives them). *Id.* Knight elected the 100% JSA, which means his surviving spouse's benefit will continue at the same (i.e., 100%) amount as his. Campbell elected the 80% JSA, meaning his surviving spouse's benefit will be 80% of the benefit he currently receives. And Fabrizio elected the 50% JSA; his spouse's benefit will be half of what he currently receives. *See id.*

The JSA is not the baseline form of pension benefit under the Plan—that would be what's known as a Single Life Annuity or SLA, a monthly benefit lasting only until the end of a retiree's life. FAC ¶ 4. Thus, to determine the amount of Plaintiffs' benefits, the Plan had to convert the SLA into a JSA. When making that conversion, ERISA requires the JSA to be "actuarial[ly] equivalent" to the SLA. *See* 29 U.S.C. §§ 1055(d), 1054(c)(3). The IBM Plan itself also specifically assured participants that *any* joint and survivor annuity that a participant may elect "shall be the Actuarial Equivalent of the single life annuity calculated" under the Plan. Mot. Ex. A at 52-53 (Plan § 12.2(b)(2), (c)(2)).

Actuarial equivalence means, in essence, that the two forms of benefit have the same value. FAC ¶ 7. Generally, an actuarial equivalence computation considers both an interest rate and the expected longevity of a participant and their spouse as set forth in a mortality table. *Id.* The interest rate accounts for the value of future pension payments, reflecting the time value of money, while the mortality table accounts for the expected likelihood of that future payment being paid to the participant or their survivor. *Id.* Once the Plan makes these calculations, it can adjust the JSA monthly payment amounts accordingly.

All else being equal, when people are expected to live longer, their JSA will be larger. The problem here, however, is that for individuals who participated in the IBM Plan before July 1, 1999, the Plan uses mortality assumptions that are over 40 years out of date. FAC ¶ 13. Given the dramatic improvements in longevity over the last 40 years, employing the Plan's outdated assumptions results in these retirees receiving JSAs that are lower than they should be.

**II.** Plaintiffs filed this lawsuit to remedy this unlawful conduct. All of Plaintiffs' claims center around Defendants' violations of ERISA's actuarial equivalence protections in 29 U.S.C. §§ 1055, 1054, and 1053. Those violations give rise to two species of claims under ERISA. The first is what one might call a "straight up" statutory violation: the statute requires joint and survivor annuities to be actuarially equivalent to single life annuities, and 29 U.S.C. § 1132(a)(3) permits a participant to sue "to enjoin any act or practice which violates" ERISA and "to obtain other appropriate equitable relief . . . to redress such violations . . . ." Thus, Plaintiffs have alleged "straight up" statutory violations in Count I (§ 1055), Count II (§ 1054), and Count III (§ 1053).

These statutory violations *also* give rise to claims for breach of the Defendants' fiduciary duties set forth in 29 U.S.C. § 1104. The Second Circuit has recognized that ERISA "impose[s] a general fiduciary duty to comply with ERISA." *Kendall v. Emps. Ret. Plan of Avon Prod.*, 561 F.3d

112, 120 (2d Cir. 2009). Thus, by administering the Plan in violation of ERISA's actuarial equivalence requirements, Defendants have also breached their fiduciary duties. In light of these breaches, as well as Defendants' inaccurate communications with Plan participants about the equivalence of their benefits, Plaintiffs have alleged a breach of fiduciary duty claim (Count IV).[1]

## ARGUMENT

### I. Defendants cannot obtain dismissal based on the statute of limitations.

#### A. Defendants' affirmative defense should be rejected at this stage because it relies on disputed fact questions outside the scope of the complaint.

The Court should not consider Defendants' affirmative statute of limitations defense at this stage. Defendants submitted approximately *700 pages* of exhibits alongside their motion. And the exhibits they rely on to support their statute of limitations defense are neither incorporated by reference in the complaint nor otherwise appropriately considered at this stage. At best, they raise fact questions about what participants knew when—and whether they had adequate information to reasonably be aware of their claim. The Second Circuit and district courts in this Circuit have repeatedly cautioned against considering a statute of limitations defense in such circumstances. The better practice—the required practice in this situation—is to wait until there is a complete factual record that can be considered on summary judgment.

The Second Circuit has cautioned that "when a district court considers certain extra-pleading materials and excludes others, it risks depriving the parties of a fair adjudication of the claims by examining an incomplete record." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002). Thus, "before materials outside the record may become the basis for a dismissal,

---

[1] These claims seek relief under both 29 U.S.C. § 1132(a)(2) and (a)(3). As the Second Circuit and Supreme Court have explained, in addition to being an avenue to enjoin "straight up" statutory violations, § 1132(a)(3) provides a remedy to participants for breach of fiduciary duties. *See, e.g.*, *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 131 (2d Cir. 2015).

several conditions must be met. For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (citations omitted).

These concerns are particularly relevant in the context of a statute of limitations defense. "Because a statute of limitations analysis is generally riddled with questions of fact which the Defendants must establish in order to bar Plaintiffs' claims, a defendant may only raise such a defense in a pre-answer motion to dismiss where the dates in a complaint clearly show that an action is barred by a statute of limitations." *Walker v. Accenture PLC*, 511 F. Supp. 3d 169, 191–92 (D. Conn. 2020) (cleaned up); *see also Sec. & Exch. Comm'n v. Fiore*, 416 F. Supp. 3d 306, 330–31 (S.D.N.Y. 2019) ("The statute of limitations is normally an affirmative defense, on which the defendant has the burden of proof. As a result, a claim should only be dismissed on a motion to dismiss based on a statute of limitations defense if the factual allegations in the complaint clearly show that the claim is untimely, and if drawing all reasonable inferences in favor of the plaintiff, the court concludes that the plaintiff's own factual allegations prove the defendant's statute of limitations defense.") (cleaned up); *OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 503 (D. Conn. 2007) ("A statute of limitations defense . . . requires a factual inquiry beyond the face of the complaint.").

This case has all the hallmarks of one where considering the statute of limitations defense at this stage would be inappropriate: the complaint does not plead the relevant dates; the proffered documents are not properly incorporated by reference to the complaint; the relevance and accuracy of those documents is disputed; and, even if considered, they would not represent the complete factual record necessary to determine the statute of limitations question. Thus, "[a]t the summary

judgment stage, with the benefit of a developed factual record, Defendants may again raise the argument that some or all of the [Plaintiffs'] claims are time-barred." *Sec. & Exch. Comm'n*, 416 F. Supp. 3d at 331-32. But it is inappropriate to do so now.

Defendants rest their statute of limitations argument on four categories of extrinsic documents: versions of the Plan Document (Exs. A, B); versions of the Summary Plan Description ("SPD") (Exs. C, D); Pension Projection Statements (Exs. E, G, I); and Benefit Election Forms (Exs. F, H, J). The Complaint neither references nor relies on SPDs or Benefit Election Forms, and includes no reference to their contents. Although the Complaint makes references to the Plan Document and Pension Projection Statements, consideration of these documents at this stage for an affirmative defense is inappropriate because they merely raise fact questions that cannot be resolved on the current record, including (1) whether and when the Plaintiffs received and reviewed these documents; (2) whether these documents disclose the "material facts" Plaintiffs would need to identify and state a claim;[2] and (3) whether Plaintiffs could even possibly have understood the complex actuarial calculations underlying their claims.

Defendants blow smoke to fill these factual voids. They suggest that the Plan's own terms cause the statute of limitation to accrue on "the date on which [participants] receive (or are granted access to) a benefit statement or a statement of deferred vested benefit which includes information on which [the] claim is based." Mot. at 9. The Plan includes no such accrual instruction, and Defendants instead rely on language purportedly from an SPD to make their argument. *Id.* (citing Ex. C (2015 SPD)). But an SPD's "statements do not themselves constitute the terms of the plan[.]" *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011).

[2] Notably, the Pension Projection Statements do not disclose the monthly payments a participant will receive upon retirement and instead state "[t]he benefits presented are only an estimate of what you ***could*** receive." *See* Ex. E at 5; Ex. 6 at 5; Ex. I at 4.

Defendants also inaccurately claim that "the Plan disclosed the actuarial assumptions it used to each Plaintiff in pension projection statements." *See* Mot. at 2, 9-10. Not so. The pension projection statements do not disclose the actuarial assumptions or methodology used to calculate the Plaintiffs' optional forms of benefits. Rather, the statements merely note the assumptions used to prepare a "relative value comparison." Ex. E at 8 ("The ***relative value*** . . . is determined using an interest rate of 8% and average life expectancies based on the UP-1984 mortality table . . . .") (emphasis added). A relative value comparison is a separate and unrelated computation from that challenged in the Complaint, and provides no visibility into the Plan's actuarial methodology used to calculate Plaintiffs' monthly pension payments. *See* 26 C.F.R. § 1.417(a)(3)(c) (describing the relative value comparison). Indeed, the actuarial assumptions used to calculate relative values comparisons do not tell the reader what assumptions or methodology a plan used to calculate the benefits that are being compared. *Id.* at § 1.417(a)(3)(c)(2)(iv) (explaining that relative value computations can be done using any "reasonable" assumption basis, including those found in § 417(e)). Accordingly, the Court should not consider the statute of limitations at this stage.

**B. In any event, Plaintiffs' claims are timely.**

Should the Court consider the statute of limitations defense at this stage, the defense should be rejected. The nature of the two types of claims affects the statute of limitations that applies to them. Claims involving "straight up" statutory violations—i.e., claims not asserting a breach of fiduciary duty—may be governed by the statute of limitations set forth in a plan document, as long as that statute of limitations is reasonable. *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 107-09 (2013). Claims involving breach of fiduciary duty are governed by the statute of limitations set forth for such claims in 29 U.S.C. § 1113.

**1. Plaintiffs' claims asserting statutory violations are timely under the Plan's two-year statute of limitations.**

Under the Plan, the statute of limitations is two years from the date the plaintiff's claim accrued. Mot. at 8 (citing Ex. A at 38-40). The relevant question here is when accrual occurred. And under a proper understanding of the Plan's accrual rules, Plaintiffs' claims are timely.

**(a) The Plan's accrual language should be interpreted as consonant with the Second Circuit's accrual holdings.**

The Plan's accrual language should be treated as consonant with the Second Circuit's holdings about when a plaintiff knows or should know of her claim. The Plan says claims accrue on "the earliest date on which the claimant knew or should have known of the material facts on which such claim or action is based. . . ." Mot. Ex. A at 39. On first blush, that language appears consistent with longstanding Second Circuit precedent regarding the federal common law of accrual in the ERISA context. But Defendants appear to add a different—and unreasonably harsh—caveat to that basic rule: that the statute begins to run from "the date on which [participants] receive (or are granted access to) a benefit statement or a statement of deferred vested benefit which includes information on which [the] claim is based." Mot. at 9 (quoting Ex. C at 45). If interpreted as Defendants appear to, this language would start the limitations clock *regardless* of whether the benefits statement disclosed enough information for the plaintiff to be actually or constructively aware of her claim, as long as the statement contained *some* information on which the claim is later based. That would be unreasonable and thus unenforceable.

The Second Circuit holds that, as a matter of federal common law, "notice of [an ERISA benefit] miscalculation can be imputed to a pensioner—and the statute of limitations will start to run—when there is enough information available to the pensioner to assure that he knows or reasonably should know of the miscalculation." *Novella*, 661 F.3d at 147. And the court of appeals has effectively rejected as unreasonable a "bright-line approach" that would start the clock upon

receipt of any benefits statement containing information that, it later turns out, is relevant to the participant's claim. Such an approach "is too harsh in that it places the burden on the pensioner—a party less likely to have a clear understanding of the terms of the pension plan and their application to his case—to confirm the correctness of his pension award immediately upon [receipt of any benefits statement], regardless of the complexity of the calculations, or of the adequacy of the defendants' explanation of the basis for the calculation." *Id.* at 146.

In *Novella*, the defendant's bright-line rule was that the statute ran from the first benefit payment. *See id.* Defendants' proposed interpretation here is even harsher—the limitations period would run from the moment "you receive" a benefits statement that merely "includes information on which your claim is based." Mot. Ex. C (2015 SPD) at 45. It apparently does not matter whether "there is enough information available to the pensioner to assure that he knows or reasonably should know of the miscalculation." *Novella*, 661 F.3d at 147. If the statement has information that an eventual claim is based on, the limitations period began running. That is patently unreasonable, as the limitations period could expire long before the plaintiff is actually or constructively aware of her claim. *See Heimeshoff,* 571 U.S. at 110 (statute of limitations would be unreasonable where it would "leave[] claimants with little chance of bringing a claim *not* barred by the State's statute of limitations"). Indeed, the Second Circuit refers to its accrual rule as "a 'reasonableness approach.'" *Osberg*, 862 F.3d at 206. Departing from that approach in favor of a harsh bright line rule would, almost by definition, be unreasonable.

**(b) Under the proper accrual standard, Plaintiffs' claims are timely.**

Under the accrual standard as properly understood, Plaintiffs' claims are timely regardless of when they retired or received the documents on which Defendants rely here. As the Second Circuit has repeatedly held, where the calculation at issue involves complex actuarial concepts, rather than something like "simple multiplication of two static numbers," merely disclosing the

underlying basis for the calculation does not put the plaintiff on notice. *Novella*, 661 F.3d at 146 (benefit statements would not put plaintiffs on notice where, "unlike the simple percentage calculation at issue in *Miller*, the determination . . . may have required more than a simple multiplication of two static numbers" (citations omitted)).

*Osberg* is an illustrative example. There, the plaintiffs received statements that in fact showed the relevant "disparity" on which their claims were ultimately based. *Osberg*, 862 F.3d at 207. Defendants thus argued that "participants should have realized that something was amiss and consulted the plan . . . ." *Id.* The Second Circuit rejected this argument because "arriving at that realization was far from straightforward." *Id.* The Court observed that "participants would have had not only to notice the disparity between the lump sum payment and account balance, but also to recognize that the disparity had some significance worth further investigation." *Id.* And "[e]ven assuming that participants picked up on the disparity, in order to discover wear-away, participants would still have had to make a sophisticated chain of deductions about the meaning of the information on their statements and the mechanics underlying their benefits." *Id.* That, in the Second Circuit's view, "is a heroic chain of deductions to expect the average plan participant to make." *Id.* at 208.[3]

That's exactly what we have here. The projection statements Defendants rely on do not disclose enough information for a participant to understand that she is not receiving an actuarially equivalent benefit. For starters, these statements do not actually disclose the actuarial assumptions or methodology used to calculate the Plaintiffs' optional forms of benefits. They address something

[3] The court also rejected the defendants' argument that this would "result in a statute of limitations that does not run 'until a lawyer approaches a potential plaintiff . . . .'" *Osberg*, 862 F.3d at 208 (cleaned up). Although recognizing the potential "merit" in "such concerns," the court rejected them, at least in part because the plaintiffs also alleged, as here, that defendants made misleading statements about the appropriateness of the benefit calculation at issue. *See id.* at 208-09.

different: the assumptions used to prepare a "relative value comparison." Mot. Ex. E at 8 ("The ***relative value*** . . . is determined using an interest rate of 8% and average life expectancies based on the UP-1984 mortality table . . . .") (emphasis added). A relative value comparison is a separate and unrelated computation from that challenged in the Complaint and provides no insight into the Plan's actuarial methodology. *See* 26 C.F.R. § 1.417(a)(3)(c) (describing the relative value comparison). Indeed, the actuarial assumptions used to calculate relative value comparisons does not tell the reader what assumptions or methodology a plan used to calculate the benefits that are being compared. *Id.* at § 1.417(a)(3)(c)(2)(iv) (explaining that relative value computations can be made using any "reasonable" assumption basis including those found in § 417(e)).

And to the extent these statements contain information relevant to understanding the actuarial equivalence of participants' JSAs, that understanding plainly "required more than a simple multiplication of two static numbers." *Novella*, 661 F.3d at 146. The equivalence of benefit calculations is something that experts fight about—and often disagree on. *E.g.*, *Herndon v. Huntington Ingalls Indus. Admin. Comm.*, 2020 WL 5809965, at *11 (E.D. Va. Aug. 28, 2020) (denying summary judgment regarding "reasonableness" of actuarial assumptions, discussing experts' competing views). It is fanciful to think that a Plan participant could unpack the complicated actuarial math needed to understand the problem with the JSA payments here. At bare minimum, this fact question about what a participant reasonably should understand is not appropriate for resolution on a motion to dismiss. *Cf. Osberg*, 862 F.3d at 208 (relying in part on factual findings about the average level of education of plan participants). Accordingly, Plaintiffs' claims under § 1132(a)(3) for "straight up" statutory violations (Counts I-III) are timely.

**2. Plaintiffs' fiduciary breach claims (Count IV) are timely under the limitations period set forth in 29 U.S.C. § 1113.**

Plaintiffs' claims for fiduciary breach (Count IV) are subject to the limitations period under 29 U.S.C. § 1113. Section 1113 states that for actions "with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part" the statute of limitations is "the earlier of (1) six years after the date of the last action which constituted a part of the breach or violation . . . or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." Defendants contend that the three year statute of limitations for "actual knowledge" applies here. Mot. at 11-12. They are incorrect.

The Supreme Court has taken great care to distinguish between actual and constructive knowledge in the context of 29 U.S.C. § 1113, holding that "to have 'actual knowledge'" of a breach for purposes of § 1113, "one must in fact be aware of it." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 776 (2020) (interpreting "actual knowledge" in § 1113). Given the Second Circuit's holdings in *Osberg* and *Novella* about the difficulty for participants of understanding complex actuarial calculations like those at issue in this case, it would be doubly inappropriate to somehow infer Plaintiffs' actual knowledge of the breach here. What the Plaintiffs were "in fact aware of," *id.*, is certainly a fact question that cannot be resolved at this stage. The Court should reject Defendants' statute of limitations defense as to Plaintiffs' fiduciary claims.

**II. Plaintiffs have properly stated claims under 29 U.S.C. §§ 1055, 1054, and 1053.**

**A. Because each joint and survivor annuity the Plan offers is subject to ERISA's actuarial equivalence requirement, all Plaintiffs state claims under § 1055.**

With respect to Plaintiffs' claim under 29 U.S.C. § 1055, Defendants argue that the 100% and 80% joint and survivor annuities that Plaintiffs Knight and Campbell elected do not benefit from the statute's actuarial equivalence protection *at all*. *See* Mot. at 13. In their view, if a plan offers options beyond a single "qualified joint and survivor annuity" and a single "qualified

optional survivor annuity," the statute's actuarial equivalence requirement simply does not apply. *Id.* But the very statutory provision they cite says otherwise, explicitly stating that it "also includes *any* annuity in a form having the effect of [a joint and survivor annuity]." 29 U.S.C. § 1055(d)(1), (2) (emphasis added). The JSAs that Plaintiffs selected fall within that definition. *See Masten*, 543 F. Supp. 3d at 33 n.2 (rejecting identical defense argument on motion to dismiss).

Defendants' own documents confirm as much. Under ERISA, a participant may "waive the qualified joint and survivor annuity form of benefit" or the "qualified optional survivor annuity" *only* if "the spouse of the participant consents in writing." 29 U.S.C. § 1055(c)(1)-(2). In other words, if a participant wants to elect any option that falls outside of § 1055's protection, spousal consent is required. Here, Defendants did not require spousal consent to elect either the 100% or 80% joint and survivor annuity. *See* Mot. Ex. E at 4, 9; Ex. I at 3, 12; Ex. G at 4, 11. If that option were *not* subject to § 1055's protections, spousal consent would be required. *See* 26 C.F.R. § 1.401(a)-20, Q&A-16 (2011) (plans "may allow a participant to elect out of such a QJSA, without spousal consent" only "in favor of another actuarially equivalent joint and survivor annuity that satisfies the QJSA conditions.").

Defendants, moreover, expressly represented that *any* offered "Joint and Survivor Annuity with a survivor percentage that is 50% or greater" is considered a "Qualified Joint and Survivor Annuity"—i.e., subject to the protections of the statute. *E.g.*, FAC §§ 25-27 (alleging the challenged JSAs were "offered by the Plan as a 'Qualified' joint and survivor annuity"); Mot. Ex. E at 9 ("Spousal consent is required when your spouse must waive his/her right to the payments he/she could receive *under the Qualified Joint and Survivor Annuity (QJSA) option*.") (emphasis added). The Plan also states that *any* joint and survivor annuity that a participant may elect "shall be the Actuarial Equivalent of the single life annuity calculated" under the Plan. Mot. Ex. A at 52-

53 (Plan § 12.2(b)(2), (c)(2)). For Defendants to contend now that, in fact, the 100% and 80% JSAs need not be equivalent would be a misrepresentation and thus a breach of fiduciary duty. *Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 105 (2d Cir. 2020) (plan administrator who promised a benefit but then provided something lesser violated "its fiduciary duty . . . when it failed to provide [plan participant] with 'complete and accurate information' on her benefits").

**B. Plaintiffs state claims under § 1054 (Count II) and § 1053 (Count III).**

Defendants challenge Plaintiffs' claims under §§ 1054 and 1053 on the ground that these "statutory provisions . . . protect only the value of a participant's benefit payable *at normal retirement age* (*i.e.*, age 65)," and no Plaintiff, Defendants contend, "alleges that their age-65 benefit was impermissibly reduced or forfeited." Mot. at 13 (emphasis in original). Defendants are incorrect about both the scope of these provisions and the allegations in the complaint.

**1. 29 U.S.C. § 1054 ensures that participants who do not retire at normal retirement age receive actuarially equivalent benefits.**

Defendants' challenge to Plaintiffs' claim under § 1054 fails. Mot. at 13-14. They correctly quote the language of the provision, noting that the equivalence protections apply "if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at *normal retirement age*." Mot. at 13 (emphasis in original). And they correctly note that the relevant comparison for purposes of § 1054 is between the JSA as of the participant's retirement date and SLA as of normal retirement. Mot. at 13-15.[4] But Defendants emphasize the wrong portion of the statute: what matters is that § 1054 protects the "accrued benefit" when determined as an amount "*other than* an annual benefit commencing at normal retirement age." 29 U.S.C. § 1054(c)(3). Those protections are implicated here.

[4] The relevant comparison for purposes of Section 1055, by contrast, is between the JSA and the SLA as of the date the participant retires.

The Plan states that "[a] Participant's accrued benefit . . . under the Plan is a single life annuity commencing on the day after the Participant's Normal Retirement Date." Mot. Ex. A at 115. Here, no Plaintiff retired at age 65, and all Plaintiffs elected a benefit "other than" the "accrued benefit" under the Plan. Plaintiffs allege, moreover, that looking specifically at benefits as of age 65 (the comparison Defendants themselves say is relevant, Mot. at 14), the Plan fails to provide actuarially equivalent benefits. FAC ¶ 76. At this stage, particularly given that Defendants do not challenge Plaintiffs' underlying allegation that they are not receiving actuarially equivalent benefits, Plaintiffs' allegations suffice to state a claim under Section 1054.

**2. As other courts have recognized, 29 U.S.C. § 1053 protects a participant's accrued benefit at whatever point she retires.**

Section 1053 is ERISA's "anti-forfeiture" provision, which bars a plan from reducing a participant's benefits beyond what is actuarially reasonable—doing so constitutes a forfeiture and is illegal. *See Contilli v. Loc. 705 Int'l Bhd. of Teamsters Pension Fund*, 559 F.3d 720, 722 (7th Cir. 2009); 26 C.F.R. § 1.411(a)-4(a) ("Certain adjustments to plan benefits such as adjustments in excess of reasonable actuarial reductions, can result in rights being forfeitable."). That is what Plaintiffs allege here: Defendants' excessive reduction of their JSA benefits caused an illegal forfeiture. FAC Count III.

Defendants contend that Plaintiffs' anti-forfeiture claims under § 1053 fail because the anti-forfeiture kicks in only once a retiree hits age 65, and Plaintiffs did not commence benefits at that age. Mot. at 13, 14. As a starting point, this argument cannot possibly apply to Plaintiffs Knight and Campbell, who retired *after* "the attainment of normal retirement age." FAC ¶ 75, Mot. Ex. J. Under the indisputable language of Section 1053, their benefit had become "nonforfeitable" and thus the excessive reduction worked an illegal forfeiture. 29 U.S.C. § 1053(a).

Even as to Plaintiff Fabrizio, who retired before age 65, Defendants' argument is incorrect. As the district court in *Urlaub* recognized in confronting the identical argument, Defendants' contention that ERISA's anti-forfeiture rules are inapplicable to individuals who retire early fundamentally misreads the statute. 2022 WL 523129, at *7. As the court explained, "section 1053(a) *does* apply to plan participants who receive early retirement benefits," and Defendants' contrary interpretation "makes no sense." *Id.* (emphasis in original).

Although § 1053 refers to the "normal retirement benefit," ERISA defines that to mean "the greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age." 29 U.S.C. § 1002(22). Thus, "defendants' interpretation would mean that, despite the fact that, under the statute, a normal retirement benefit includes an early retirement benefit, this benefit is not protected under section 1053(a) until the attainment of normal retirement age." *Urlaub*, 2022 WL 523129, at *7. That interpretation is untenable. *Id.*

Where a participant takes early retirement benefits that are impermissibly reduced based on outdated actuarial assumptions, and those impermissibly-reduced benefits "do not terminate when the plaintiffs reach normal retirement age," *id.* at *8, the plan still fails to "provide that [the] employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." 29 U.S.C. § 1053(a). That violates the statute. *Urlaub*, 2022 WL 523129, at *8.

Consistent with *Urlaub*, courts (including in this Circuit) regularly conclude that "actuarial assumptions [that] reduced [the plaintiffs'] benefits as compared to the Plan's default benefit" give rise to a claim under § 1053. *Masten*, 543 F. Supp. 3d at 36; *see also Contilli*, 559 F.3d at 722; *Torres*, 416 F. Supp. 3d at 650 (concluding that "[i]mproper actuarial adjustments that reduce a pension's value is a forfeiture under ERISA § 203," and noting that Section 1053 references "the early retirement benefit"); *Smith*, 2019 WL 2644204, at *3. This Court should do so as well.

## III. Plaintiffs have stated claims in Count IV for breach of fiduciary duty.

### A. Under squarely on point Second Circuit authority, Plaintiffs have stated claims for breach of fiduciary duty based on Defendants' statutory violations.

Next, Defendants contend that Plaintiffs' fiduciary breach allegations in Count IV fail to state a claim. Mot. at 15. Defendants' argument—that they cannot breach fiduciary duties by following the Plan Document—is fatally flawed. First, Defendants fail to acknowledge that the Plan Administrator Committee, in addition to being the Plan's "named fiduciary" and "plan administrator," FAC ¶¶ 35-37, was granted "full authority and discretion" by the Plan "to incorporate changes required by law" and "determine whether one form of income under the Plan is the Actuarial Equivalent of another form of income under the Plan." *Id.* ¶ 38. The duties flowing from this express grant of authority are squarely implicated by this case because Plaintiffs are complaining that the Plan's terms did not comply with the law or provide actuarially equivalent benefits. FAC Count IV; s*ee also* 29 U.S.C. § 1002(21)(A)(iii) ("a person is a fiduciary with respect to a plan to the extent . . . he has any discretionary authority or discretionary responsibility in the administration of such plan.").

While Defendants are correct that, by challenging illegal Plan terms, Plaintiffs' fiduciary breach claim is premised on Defendants' statutory violations, they are wrong that this somehow makes the fiduciary claim deficient. An ERISA fiduciary is not free to ignore the statute's substantive requirements. Defendants' argument to the contrary is indeed foreclosed by on point Second Circuit authority—authority that Defendants omit from their opening brief. The Second Circuit has plainly stated that, through 29 U.S.C. § 1104(a)(1)(D), "[t]he statute does impose a general fiduciary duty to comply with ERISA." *Kendall*, 561 F.3d at 120, *abrogated in part on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 578 U.S. 118, 127 (2014).

Thus, by failing to comply with ERISA's actuarial equivalence requirements—and by applying plan terms that violate those requirements—Defendants breached their fiduciary duties.

The Second Circuit has applied this rule in circumstances directly analogous to this case. In *New York State Psychiatric Ass'n, Inc., v. UnitedHealth Group*, 798 F.3d 125, 131 (2d Cir. 2015), the plaintiff alleged that the defendants breached their fiduciary duties by following plan terms applying different policies to mental health claims than to medical claims. The plaintiff's fiduciary breach claim was premised entirely on a statutory violation—treating mental health and medical benefits differently violated ERISA's requirement that "treatment limitations applied to mental health benefits be no more restrictive than the . . . requirements and treatment limitations applied to . . . medical and surgical benefits." *Id.* at 129 (citing 29 U.S.C. § 1185a(a)(3)(A)). Reiterating that "[t]he statute imposes a general fiduciary duty to comply with ERISA," the Second Circuit held that there "is no serious dispute that Denbo's [fiduciary breach] claims are both adequately and plausibly alleged." *Id.* at 132 (quoting *Kendall*, 561 F.3d at 120) (formatting cleaned up).

This case presents essentially the same situation. Plaintiffs allege that Defendants violated their fiduciary duties by failing to provide benefits that comply with ERISA's actuarial equivalence requirements. Just as in *New York State Psychiatric*, ERISA imposes a requirement on the benefits offered by the plan, and by failing to adhere to that requirement (either by applying the illegal terms or failing to use their authority to amend the plan to bring it into compliance with the law), Defendants violated their "general fiduciary duty to comply with ERISA." *Id.*[5]

---

[5] Defendants do not cite any controlling authority to the contrary. The district court cases they cite (Mot. at 19 & n.10), of course, cannot undermine the Second Circuit's clear holdings on this issue. It is worth noting, however, that Defendants miscite a decision of this Court as purportedly reaching a contrary holding to *Kendall*. *Roe v. Empire Blue Cross Blue Shield*, 2014 WL 1760343, at *8 (S.D.N.Y. May 1, 2014) (Román, J.), *aff'd*, 589 F. App'x 8 (2d Cir. 2014). Although the Court quoted one pre-*Kendall* district court decision suggesting that the failure to comply with ERISA

In another directly analogous context, the Supreme Court has recognized a fiduciary's ongoing obligation to ensure that an ERISA plan complies with the law. In *Tibble v. Edison International*, the Court faced the question of whether an ERISA fiduciary had an ongoing obligation to ensure that the investment options set forth in the plan complied with ERISA's strictures. 575 U.S. 523 (2015). As with actuarial assumptions, selecting the menu of investment options is, at some level, a question of plan design—the sponsor must choose the options, and those options get set out in the plan. Nonetheless, the Court recognized that "under trust law, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones." *Tibble*, 575 U.S. at 530.

This duty existed "separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." *Id.* at 529; *see* Br. of U.S., *Tibble*, No. 13-550, 2014 WL 6984131, at *8 (Dec. 9, 2014) ("An ERISA fiduciary with responsibility for plan investments has a duty to periodically review those investments and remove imprudent ones, even if that fiduciary did not make the initial investment decision. Under the law of trusts, it is well-established that one of a trustee's first duties upon taking office is to review the settlor's investments and 'dispose of any part of the trust property included in the trust at the time of its creation which would not be a proper investment for the trustee to make.'"). Accordingly, the Court held that a "plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Tibble*, 575 U.S. at 530.

does not amount to fiduciary breach, the Court did not ultimately resolve the question. *See id.* ("The Court has determined that the Plan does not violate section 510 of ERISA and therefore, carrying out the terms of the Plan cannot be a violation of fiduciary duties. Accordingly, it is not necessary to determine whether either of the defendants was acting as a fiduciary.").

The same reasoning applies here. Trust law has always imposed a requirement that fiduciaries comply with the law in their administration of a trust, even if that means going against the trust's terms. *See, e.g.*, Restatement (Third) of Trusts § 72 (2007) ("A trustee has a duty not to comply with a provision of the trust that the trustee knows or should know is invalid because the provision is unlawful or contrary to public policy."); *id.* cmt. (b) ("Not only is the trustee under no duty to comply with a term of the trust that is invalid (Comment a), but, as stated by the rule of this Section, the trustee ordinarily has a duty to the beneficiaries not to comply."); *id.* ("Furthermore, a trustee has a duty not to comply with a trust provision that directs the trustee to refrain from doing an act, if it is unlawful or against public policy for the trustee not to perform that act."); *contra* Mot. at 17 ("The Plan Fiduciary Had No Duty to Deviate from the Terms of the Plan in Calculating Benefits."). Thus, under the reasoning of *Tibble*, the longstanding duty imposed by trust law to ensure that the trust is administered lawfully applies here as well. Plaintiffs have accordingly stated claims for fiduciary breach.

**B. Plaintiffs have stated fiduciary breach claims based on Defendants' inaccurate and misleading statements about the equivalence of Plaintiffs' benefits.**

Defendants next contend that Plaintiffs cannot state a breach of fiduciary duty claim based on Defendants' inaccurate and misleading statements about the equivalence of Plaintiffs' benefits. Mot. at 21-23. Defendants misapprehend the relevant legal standard and overlook Plaintiffs' detailed allegations about what made their communications inaccurate and misleading.

It is beyond dispute that ERISA fiduciaries have a duty to communicate clearly and accurately to their participants. As the Second Circuit has described it, a defendant "breache[s] its fiduciary duty to act with care, skill, prudence, and diligence when it fail[s] to provide [participants] with complete and accurate information on [their] benefits." *Sullivan-Mestecky,* 961 F.3d at 105 (formatting cleaned up); *see also, e.g.*, *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d

869, 872 (7th Cir. 2013) (fiduciaries must "disclose material information to beneficiaries . . . [which] encompasses both an obligation not to mislead the participant of an ERISA plan, and also an affirmative obligation to communicate material facts affecting the interests of plan participants"); *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 750 (D.C. Cir. 1990) ("The duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA.")

These are often styled as claims for "misrepresentation," but they do not require intent to defraud. Even "unintentional misrepresentations" give rise to fiduciary liability if the defendant acted imprudently in its communications with participants. *Sullivan-Mestecky*, 961 F.3d at 104-05 (imposing fiduciary liability for failing to communicate accurately regarding benefits where no intentional misrepresentation was alleged, only imprudence); *see SEC v. Cap. Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 193 (1963) ("Fraud has a broader meaning in equity (than at law) and intention to defraud or to misrepresent is not a necessary element."); *id.* at 194 ("Fraud, indeed, in the sense of a court of equity properly includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.").[6]

Under any pleading standard, Plaintiffs have adequately alleged that Defendants breached their duty to communicate accurately with participants. At this stage, Defendants do not challenge Plaintiffs' substantive allegations that their JSAs are not actuarially equivalent to the SLAs they could have received. Yet, as Plaintiffs allege in detail in paragraphs 93-106 of the FAC, Defendants

[6] The Second Circuit case Defendants rely on in arguing to the contrary involved the "fraud or concealment" exception to the statute of limitations in 29 U.S.C. § 1113, not a fiduciary's duty to communicate accurately with plan participants. That is an entirely different context. *See Janese v. Fay*, 692 F.3d 221, 228 (2d Cir. 2012) (cited Mot. at 21).

sent communications to Plaintiffs affirmatively telling them that their JSAs *did* have equivalent value to the SLA. Even if "unintentional," that is a straightforward failure to communicate accurately with participants, in breach of Defendants' fiduciary duties.

Defendants complain that Plaintiffs have not sufficiently described the origin of these statements. Mot. at 21. That argument is curious, given that Defendants have apparently identified the exact communications referred to in the Complaint and attached them to their motion to dismiss. *See* Mot. at 6 n.3 ("Plaintiffs allege that . . . the communications Defendants provided . . . were misleading. The forms Plaintiffs reference are their projection statements. Because Plaintiffs allege that these statements do not comply with the law and contain misrepresentations or omissions, they are both incorporated by reference and integral to the FAC." (citing FAC ¶¶ 93-106)). The Complaint, in other words, told Defendants *exactly* the communications that Plaintiffs referred to, and Defendants know *exactly* when those communications were sent, by whom, and under what circumstances. That is all that the Federal Rules require. *See, e.g.*, *Todd v. Oppenheimer & Co*., 78 F.R.D. 415, 419 (S.D.N.Y. 1978) ("Rule 9(b) assures that the defendants are given notice of the exact nature of the fraud claimed, sufficient to permit responsive measures."). Given that Defendants do not challenge, at this stage, the underlying basis for Plaintiffs' allegations of inaccuracy, Plaintiffs have properly stated claims for fiduciary breach based on Defendants' inaccurate and misleading statements about the equivalence of Plaintiffs' benefits.

## IV. Plaintiffs had no duty to exhaust their claims alleging statutory violations or breach of fiduciary duty based on those violations.

Finally, Defendants assert the affirmative defense that Plaintiffs were required to exhaust their claims here. Exhaustion is not required, however, because Plaintiffs' claims are based on statutory violations. The Second Circuit has yet to rule definitively on the question of whether plaintiffs must exhaust ERISA statutory claims. But "the majority of the courts of appeal in other

circuits, and the district courts in the Second Circuit, have concluded that a claim based on a statutory violation of ERISA, as opposed to a plan-based claim, does not require administrative exhaustion." *Savage v. Sutherland Glob. Servs., Inc.*, 521 F. Supp. 3d 308, 314 (W.D.N.Y. 2021). The Second Circuit has indeed "acknowledged that district courts with the circuit have 'routinely' not applied the exhaustion requirement when a plaintiff alleges a statutory ERISA violation." *Id.*at 313 (quoting *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 102 (2d Cir. 2005)).

As case after case makes clear, that is the "distinct trend" in this Circuit. *See e.g.*, *id.*; *Role v. Johns Hopkins Bayview Med. Ctr.*, 2008 WL 465574, at *3 (E.D.N.Y. Feb. 15, 2008); *Park v. Trs. of 1199 SEIU Health Care Emps. Pension Fund*, 418 F. Supp. 2d 343, 358 (S.D.N.Y. 2005); *Shamoun v. Bd. of Trs.*, 357 F. Supp. 2d 598, 602 n.3 (E.D.N.Y. 2005); *Falberg v. Goldman Sachs Grp., Inc.*, 2020 WL 3893285, at *6 (S.D.N.Y. July 9, 2020); *McCulloch v. Bd. of Trs. of SEIU Affiliates Officers and Emps. Pension Plan*, 2016 WL 9022578, at *6 (S.D.N.Y. Mar. 31, 2016), *aff'd*, 686 F. App'x 68 (2d Cir. 2017); *De Pace v. Matsushita Elec. Corp. of Am*., 257 F. Supp. 2d 543, 557 (E.D.N.Y. 2003); *Diamond v. Loc. 807 Lab.-Mgmt. Pension Fund*, 2014 WL 527898, at *6 (E.D.N.Y. Feb. 7, 2014), *aff'd*, 595 F. App'x. 22 (2d Cir. 2014).

This Court should follow that trend, particularly where Defendants have not pointed to any method within the Plan's exhaustion procedures that would permit the kinds of remedies that Plaintiffs seek for the statutory and fiduciary violations at issue in this case. *See Savage*, 521 F. Supp. 3d at 314-15; *Masten,* 543 F. Supp. 3d at 38 (rejecting exhaustion defense for actuarial equivalence claims, *inter alia*, because defendants did not "specify any available administrative processes that would allow Plaintiffs to adjudicate their claims about the reasonableness of actuarial assumptions"). Defendants cite only a provision of the Plan that requires exhaustion for a participant who "believes he or she is entitled to benefits and has not received them." Mot. at 23.

Plaintiffs don't assert a claim for "benefits" here; rather, as Defendants appear to acknowledge, their claims are "premised on a violation of ERISA's statutory requirements." *Id.* This is the precise circumstance where courts in this Circuit do *not* impose an exhaustion requirement. This case should be no different.

**CONCLUSION**

Defendants' motion to dismiss should be denied.

Dated: December 19, 2022

Respectfully submitted,

*/s/ Michelle C. Yau*

Michael B. Eisenkraft (ME-6974)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street ● 14th Floor
New York, New York 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
meisenkraft@cohenmilstein.com

Michelle C. Yau (pro hac vice)
Daniel R. Sutter (pro hac vice)
Laura O. Rockmore (pro hac vice)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
dsutter@cohenmilstein.com
lorockmore@cohenmilstein.com

Peter K. Stris (pro hac vice)
Elizabeth Brennan (pro hac vice)
John Stokes (pro hac vice forthcoming)
**STRIS & MAHER LLP**
777 S. Figueroa St. ● Suite 3850
Los Angeles, CA 90017
Telephone: (213) 995-6800
Fax: (213) 261-0299

Shaun P. Martin (pro hac vice forthcoming)
5998 Alcala Park ● Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Fax: (619) 260-7933

***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

I, Daniel Sutter, certify that on December 19, 2022, I served Plaintiffs' Opposition to Defendants' Motion to Dismiss the Amended Complaint upon all counsel of record via electronic service pursuant to Federal Rule of Civil Procedure Rule 5(b)(2)(E).

Dated: December 19, 2022

Respectfully submitted,

*/s/ Daniel R. Sutter*

Daniel R. Sutter
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699
dsutter@cohenmilstein.com